CASGRAIN, Respondent, vs. MILWAUKEE COUNTY, Appellant.

*December 18, 1891 — January 12, 1892.*

*(1) Equity: Reformation of contract: Pleading.  (2–4) Construction of contract: "Extras:" Ambiguity.*

1. A written contract will be reformed only in an equitable action or upon an equitable counterclaim — not upon a mere defense in an action at law.
2. Under a contract for the furnishing of materials and performance of labor, "extras" consist of labor or materials not called for by such contract.
3. In the construction of a contract, if the terms thereof are clear and unambiguous they must control and are not affected by previous negotiations or subsequent conduct of the parties.
4. A contract for the construction of water-works for a county hospital provided that the contractor should "furnish all the materials and do and perform all the work to erect, complete, and finish the water-works, . . . and do and furnish everything necessary and required to be furnished in and about the construction, erection, and completion of said water-works so to be erected, according to the plans and specifications" thereto attached.  The specifications provided that "all the pipes and special castings, stop-gates, hydrants," etc., "will be furnished to the contractor on the track near the asylum grounds where they are to be laid."  *Held,* that the contract was not ambiguous, so as to render evidence of the previous negotiations and subsequent conduct of the parties admissible to show that the contractor was to furnish the materials above mentioned.

APPEAL from the Circuit Court for *Milwaukee* County. In March, 1887, the respondent, *Casgrain*, entered into a contract with the appellant county to construct water-works at the county hospital. Said contract provided that *Casgrain* should "furnish all the materials and do and perform all the work to erect, complete, and finish the water-works for *Milwaukee County*, . . . and do and furnish everything necessary and required to be furnished in and about the construction, erection, and completion of said water-works so to be erected, according to the plans and specifications . . . hereto attached, and made a part of this contract." Said specifications contained the following provisions, among others: "All the pipes and special castings, stop-gates, hydrants, and cast-iron frames and covers and stop-gate boxes will be furnished to the contractor on the track near the asylum grounds, where they are to be laid. They will be distributed by the contractor as soon as received and inspected, and he shall have no claim upon the county for any delay in the delivering by the pipe founders." "The price the contractor receives for laying the pipes shall be full compensation for furnishing all the material not found on the ground (except pipes or other castings, stop-gates, stop-gate boxes, and hydrants)." Said contract also provided that no claim for extra work or materials should be allowed, unless the order therefor was given in writing, and a stipulation fixing the price indorsed on the original contract and signed by the parties. The contract price for the entire work was $27,950.

Under this contract the respondent constructed said system of water-works, and furnished water-pipe, hydrants, water-gates, and other castings, which by the terms of the specifications the county was to furnish, to the amount of $6,279. For this amount, with sundry other items, the respondent filed his claim with the county board, by whom the said claim for pipe and castings was entirely rejected.

From this an appeal was taken to the circuit court, and pleadings were drawn; the complaint being in the general form for goods furnished and work performed as in the bill of items set forth, and the answer setting up the said contract, and claiming that the said charges for pipe and castings were items covered by the terms of the written contract; that no order for any extra work nor stipulation fixing the price thereof were ever made in writing; and that the plaintiff had been paid the full contract price for his work and material, except the sum of fifty cents.

Upon the pleadings the action was sent to a referee to hear, try, and determine. Much testimony was taken, the evidence closed, and the oral decision of the referee announced, when the then district attorney moved to amend the county's answer by inserting an allegation as follows: "That the specifications which were attached to the contract between the plaintiff and defendant, and made a part thereof, were prepared long prior to the making of said contract between the parties thereto. That said specifications were prepared with a view to having some other person than the contractor furnish all the pipe, special castings, stop-gates, hydrants, and cast-iron frames and coverings and stop-gate boxes, but by the terms of the agreement between the plaintiff and defendant said plaintiff agreed to furnish all of the material, of whatever nature or description, including the material above mentioned, for the completion of said work; and that by mutual mistake of the plaintiff and the defendant said specifications were not corrected before making them a part of said contract." To this proposed amendment respondent objected as coming too late and changing the nature of the defense; but it was allowed.

The referee found that *Casgrain* had furnished the said water-pipe and castings, and that they were reasonably worth $6,279, and that the same were a part of the pipe

and special castings which, under the specifications, were to be furnished on the ground to the contractor; but he further found that both parties intended by the contract to provide that *Casgrain* should furnish all the materials, and that so much of the specifications as provided for the furnishing of any materials by the county was left therein by mutual mistake, and that *Casgrain* was not entitled to recover anything on account of said water-pipe and castings furnished. Upon review of the referee's findings in the circuit court, that court found that there was no such clear proof of fraud or mutual mistake in the making of the written contract as was required by law to justify a reformation thereof, and that, no action or counterclaim having been brought for that purpose, and there being no ambiguity, the contract must govern the parties; and, consequently, that the respondent was entitled to recover the reasonable value of said pipe and castings from the county. The findings of the referee were modified so as to allow this claim, and judgment was entered thereon against the county, from which this appeal was taken.

*Clarence S. Brown*, attorney, and *James C. Officer*, of counsel, for the appellant, to the point that the contract was ambiguous, cited *Horner v. C., M. & St. P. R. Co.* 38 Wis. 175; *Lyman v. Babcock*, 40 id. 511; *Beason v. Kurz*, 66 id. 448; *Ganson v. Madigan*, 15 id. 144; *Rockwell v. Mut. L. Ins. Co.* 21 id. 548; *Sawyer v. Dodge Co. Mut. Ins. Co.* 37 id. 503.

For the respondent there was a brief by *Turner & Timlin*, and oral argument by *W. H. Timlin*.

WINSLOW, J. It is clear that under the terms of the contract and specifications upon which the appellant has stood since the beginning of this litigation the county is bound to furnish the pipe and castings in controversy. But it is claimed by the county that there was a mutual mistake

made in the contract; that the specifications which contained this provision had been prepared previously, with the idea of making a different contract from the one finally made; and that the clauses which provide for the furnishing of pipes by the county were left in the specifications by mistake, the intention of both parties being that the contractor should furnish all the pipes. Much testimony was introduced, tending in some measure to support this claim. It consisted, among other things, of previous advertisements and bids for the work, of conversations, and of the statements of various members of the county building committee as to their understanding of the terms of the contract.

Doubtless there was much of this testimony which was inadmissible under the pleadings, but it is unnecessary to decide this question, because all the testimony was admitted, and the circuit judge, after considering the same, has found that there is not that clear and satisfactory evidence of fraud or mistake which authorizes a reformation of the contract. After examining all the testimony, we are satisfied that under the rule frequently laid down by this court we cannot reverse this finding of the circuit judge. This is probably a sufficient answer to the appellant's claim of mutual mistake. There is, however, another answer equally conclusive.

The appellant relies upon the contract, but seeks its reformation. The reformation of contracts is purely cognizable in equity. It must be done by equitable action or by equitable counterclaim. It cannot be by mere defense in an action at law. In the present case there has been no action brought nor counterclaim interposed to reform this contract; consequently it must stand as written.

It is claimed that the pipe and castings in question were extras. Not so. Extras consist of labor or materials not called for by the original contract. These materials are

all called for in the contract. They were not furnished by the party who agreed to furnish them, but they cannot be called extras.

It is said that the contract is ambiguous, and that consequently the advertisement and bid which preceded it, as well as the bond accompanying it, must be resorted to, to properly construe its meaning; and, further, in this direction, it is said that the practical construction placed upon an ambiguous contract by the acts of the parties is entitled to weight. It is sufficient to say on these various propositions that the contract does not seem to us to be ambiguous. When the terms are clear and unambiguous they must control; they are not affected by previous negotiations nor subsequent conduct of the parties.

There are no other points requiring attention.

*By the Court.*— Judgment affirmed.