JILEK, Respondent, vs. ZAHL, Appellant.

*December 10, 1915—January 11, 1916.*

*Reformation of contracts: Action at law: Change by amendment to equitable action: Statute regulating procedure, when applicable to pending litigation: Evidence: Sufficiency.*

1. No recovery of the balance alleged to be due upon a land contract can be had in an action at law where it is necessary first to reform the contract; but under sec. 2669a, Stats. (ch. 353, Laws 1911), and sec. 2, ch. 219, Laws 1915 (sec. 2836b, Stats. 1915), an amendment may be allowed changing the action to one in equity, and it may then be tried and determined as if so brought.
2. Although in such a case plaintiff had judgment in the action at law before said law of 1915 took effect, upon reversal of the judgment there is no vested right in the procedure in force at the time it was rendered, and subsequent proceedings may be directed in accordance with the law of 1915.
3. Even though the only direct testimony is that of the two parties, who flatly contradict each other, there may be corroborating circumstances proven which will satisfy the rule that the evidence must be clear and convincing in order to justify reformation of a written contract.

APPEAL from a judgment of the municipal court of Langlade county: T. W. HOGAN, Judge. *Reversed.*

Action to recover $500, being the balance due on the pur- chase price of an equitable interest in twelve forties of tim- ber land alleged to have been sold by the plaintiff to the defendant by written contract December 8, 1911. The de- fendant by answer denied any contract with himself, but al- leged that the plaintiff executed to Adelaide Zahl (defend- ant's wife) a land contract to convey three forties of the lands in question for $650 (of which $150 was paid down), and that plaintiff has refused to execute or deliver a convey- ance of the same though said Adelaide has offered and now offers to pay the balance when good title is furnished.

On the trial before a jury it appeared that on October 12, 1909, the plaintiff received a land contract from the trustees of the estate of George Baldwin, deceased, for the conveyance of the twelve forties of land in question for the sum of $4,500; that he went into possession, cut considerable quan- tities of cedar, paid about $2,500 on the purchase price, and in April, 1911, proposed to one Hayssen, agent of said trus- tees, that he would assign back his interest in the contract so far as nine of the forties were concerned if the trustees would deed to him the remaining three forties and thus close the transaction; that in pursuance of this idea he executed and gave to Hayssen, April 5, 1911, an assignment of the con- tract as to the nine forties with the name of the grantee in blank; that nothing came of this offer, but Hayssen did not return the assignment to the plaintiff, and on the contrary and without *Jilek's* knowledge sold and transferred it to de- fendant's wife, Adelaide Zahl, acting through her husband, and received in payment the discharge of a debt of $150 which he owed *Zahl;* that no written assignment was made out, but that Hayssen simply filled in the name of Adelaide Zahl as grantee in the assignment made by the plaintiff and delivered it to *Zahl;* that in December, 1911, the parties ne- gotiated together concerning the lands, the plaintiff not be-

ing aware, as he claims, that *Zahl* had obtained the Hayssen assignment. Here the stories of the plaintiff and the defendant radically differ. A written contract was made out by *Zahl* December 8, 1911, by the terms of which *Jilek,* in consideration of the sum of $650, of which $150 was paid down and the balance was to be paid in two years, agreed to convey three specified forties of the twelve to Adelaide Zahl. The plaintiff claims that the real transaction at this time was that he sold his interest in the entire twelve forties to *Zahl* himself, for which *Zahl* agreed orally to pay him $650 ($150 being paid down) and to pay the trustees of the Baldwin estate the balance due on the original contract, which was nearly $2,000; that he, the plaintiff, knew nothing of Adelaide Zahl; that *Zahl* drew the written contract, which he, plaintiff, supposing it agreed with the oral agreement, signed and returned to *Zahl,* and which now turns out to be a contract to convey three forties for $650 to Adelaide Zahl. On the other hand the defendant claims that he was acting in the transaction as the agent of his wife; that he never talked with plaintiff until December, 1911; that he did not try to buy the twelve forties from *Jilek,* but only the three forties (he having already in his possession the Hayssen assignment covering the other nine forties); that *Jilek* understood about this assignment; that it was understood that he, *Zahl,* was to pay three fourths and *Jilek* one fourth of the amount due the Baldwin estate; that he drew the land contract covering the three forties in *Jilek's* presence, read it to him, and *Jilek* signed it and took it away with him, and when he returned said that Hayssen had read it to him and witnessed it. On the contract the names of *Zahl* and Hayssen appear as witnesses.

The trial judge charged the jury in effect that if they believed the plaintiff's version of the last named transaction they should find for the plaintiff, and if they believed the

defendant's version they should find for the defendant. A verdict for plaintiff was returned, and from judgment thereon the defendant appeals.

*H. F. Morson,* for the appellant.

For the respondent there was a brief by *Goodrick & Goodrick,* and oral argument by *Arthur B. Goodrick.*

Winslow, C. J. It may well be that the result reached in this case is not inequitable, but it is very clear that there has been misconception of the real nature of the controversy. A written contract to convey three forties of land appears to have been made by *Jilek* running to Adelaide Zahl. On its face it is a perfectly good contract and under familiar rules it excludes evidence of a parol contract contradicting or varying its terms. It may be reformed for mistake and enforced as reformed, but until reformed its provisions are controlling. The only way to reform it is by action in equity brought for the purpose of reforming it and enforcing it as reformed. *Casgrain v. Milwaukee Co.* 81 Wis. 113, 51 N. W. 88; *Garage E. M. Co. v. Danielson,* 156 Wis. 90, 144 N. W. 284. So it is apparent that this action should have been brought in equity, and it is equally apparent that when brought at law no recovery should have been had. Until quite recently the plaintiff would have been thrown out of court and compelled to commence a new action because of the ironclad rule that an amendment could not be allowed which would change the action from one at law to one in equity. *Charmley v. Charmley,* 125 Wis. 297 (103 N. W. 1106) and cases cited at page 302. This rule has been changed, however, by sec. 2669*a,* Stats. (ch. 353, Laws 1911), and no miscarriages of justice of this nature need now occur. Further progress along the same line has been made by sec. 2 of ch. 219 of the Laws of 1915 (sec. 2836*b,* Stats. 1915), which went into effect after the trial in the present case, and which provides in the most comprehensive way for amendments in cases like the

present and for the continuance of the action or proceeding in the proper court and under the proper form of action in case of mistake in the form or substance of the remedy originally sought.

The beneficent effect of this provision can hardly be over-estimated. It means that it will no longer be necessary to kick the plaintiff out of the back door of the courtroom (with costs) in order that he may re-enter by the front door in a different garb. It means that we are losing interest in the mere niceties of procedure and gaining interest in the accomplishment of justice "completely and without denial, promptly and without delay" (Const. art. I, sec. 9).

Being an act regulating procedure, this act affects pending litigation except so far as rights may have become vested, and in case of the reversal of a judgment there is no vested right in the procedure in force at the time the judgment was rendered.

As we have seen, the action should have been brought in equity. Whatever be our conclusion as to the action which the trial court should have taken under the law existing at the time of the rendition of the judgment, there can be no doubt as to the proper course now. The action must be continued as an action in equity to reform and enforce the land contract; Adelaide Zahl and the trustees of the Baldwin estate must be brought in by order of court as necessary parties to a complete determination of the matters in controversy; the plaintiff must be required to amend his complaint in accordance with the facts as he claims them to be, and the defendants should be allowed to make answer thereto as they may be advised, and the action should proceed to trial before the court with all convenient speed at such time as the trial court shall designate. It is undoubtedly the rule that the evidence must be clear and convincing in order to justify reformation of a written contract, and it is equally true that so far as direct testimony is concerned there is in the present·

case the oath of the plaintiff against the oath of the defendant, but no reason is perceived why there may not be corroborating circumstances proven which will satisfy the rule even though the number of direct witnesses be equal.

It should be the aim of the trial court and of all parties to expedite the second trial of the case so that the delay will be for as brief a period as possible.

*By the Court.*—Judgment reversed, with costs, and action remanded for further proceedings in accordance with this opinion.