These actions were consolidated, and, by agreement, but one set of findings of fact and conclusions of law was made and filed, and one judgment entered. The second-captioned *Page 110 
action was commenced on the 18th day of February, 1944, in the circuit court for Milwaukee county by service of summons and complaint, together with an injunctional order. The purpose of the action and the injunctional order was to restrain the defendants, Adolph Stoelting, Otto Stoelting, and Gustave Stoelting from voting certain shares of the capital stock of Stoelting Brothers Company, a Wisconsin corporation, at a meeting which was called by two of the stockholders, Otto and Gustave Stoelting, and which was to be held on the 21st day of February, 1944.
The first-captioned action was commenced on the 23d day February, 1944, in the circuit court for Milwaukee county by the service of summons and complaint and an injunctional order. It was brought by the plaintiffs for the purpose of obtaining a declaratory judgment under sec. 269.56, Stats., as to the rights, status, and other legal relations of the parties; for a construction of a certain written agreement entered into between the parties on the 16th day of February, 1943, and a determination of the rights and obligations of the parties under the terms of said agreement; for the construction of a certain proxy signed by Otto and Gustave Stoelting, dated February 16, 1943; for a construction of the notice of revocation of said proxy; and for such other and further order and relief as might be just and equitable.
The venue in said actions was thereafter changed from Milwaukee county to Manitowoc county. The plaintiffs-appellants, Frederick A. Stoelting and Carl R. Stoelting, are sons of the defendant Adolph Stoelting and nephews of the defendants Otto Stoelting and Gustave Stoelting. The case was tried to the court without a jury. The findings of the trial court are in substance as follows:
Since 1919 the capital stock of the Stoelting Brothers Company was equally held by the defendants Otto, Gustave, and Adolph Stoelting, each owning three hundred thirty-three shares, one share being unissued. The authorized capital was $100,000, divided into one thousand shares of $100 each. *Page 111 
The ownership of the stock so continued until in February, 1943, at which time the plaintiffs Frederick A. Stoelting and Carl R. Stoelting became stockholders. During this period Gustave Stoelting was president, Otto Stoelting was vice president, and Adolph was secretary, and each continued in his respective office to the time Frederick and Carl Stoelting became stockholders. The three brothers constituted the board of directors.
During this period the company was engaged in a general hardware and merchandise business, manufactured and dealt in machinery, mostly dairy apparatuses and supplies. The company was successfully operated and well managed, and made money every year excepting 1932, when it showed a loss of $1,900. From 1919 until the depression, the salary of each of the three brothers was $10,000 per year. Their salaries were reduced during the depression, but again restored to $10,000 in 1935. In addition, the company declared a $4,500 dividend. In 1936 each brother received a salary of $12,000, and a $9,000 dividend was declared. In 1940 and thereafter the salary of each was $15,000. During all these years the company discounted all its bills and built up a substantial surplus.
From 1932 until August, 1942, the plaintiffs Frederick A. and Carl R. Stoelting were employed by the Stoelting Brothers Company on an hourly basis. On August 12, 1942, Carl was made shop superintendent and Frederick was made production manager. In October, 1942, G.C. Schroeder was employed by the company and made works manager. Carl Stoelting was instrumental in bringing Schroeder into the business. There was no friction of any kind during all the years the three brothers managed the company. War conditions somewhat disturbed the business and possibly influenced the brothers to move Carl and Frederick into their new positions. The defendants Adolph and Gustave were shopmen.
In the late fall of 1942, at the request of Carl, Ed Schulte, the company's accountant, approached Otto about selling his *Page 112 
interest in the company to Carl and Frederick. Neither had any financial means but their father agreed to assist them at their request. Negotiations continued and culminated in the agreement of purchase and sale dated February 16, 1943 (printed in the margin [1]). *Page 113 
When Gustave learned that Otto was negotiating to sell his interest he informed Otto that in the event Otto sold, he (Gustave) would desire to sell. Carl and Frederick intended to finance the purchase through the First National Bank of Milwaukee with such assets as their father might offer. The original plan was to pay the entire purchase price but the bank *Page 114 
refused, with the result that the contract, printed in the margin, was agreed upon and entered into. While Adolph is named as one of the purchasers, the stock purchased from Otto and Gustave was in fact assigned to Frederick and Carl. While the contract does not provide for the source of the funds out of which payments were to be made, it was agreeable to all to have the first payment of $56,665.50 made out of the company's funds and assets. This was done on or about March 13, 1943, at which time certificates of stock were issued to Carl for one hundred eleven shares and to Frederick for one hundred eleven shares. The nine hundred ninety-nine shares then outstanding were of record as follows: Adolph — three hundred thirty-three shares; Carl — one hundred eleven shares; Frederick — one hundred eleven shares; Otto — two hundred twenty-two shares; Gustave — two hundred twenty-two shares. Total — nine hundred ninety-nine shares. *Page 115 
The one hundred eleven shares each to Carl and Frederick were outright sales. The balance of the shares was by option to purchase. All of the stock excepting Adolph's was deposited in escrow with the Citizens State Bank of Kiel. At the time the contract was entered into Otto and Gustave resigned as directors. On February 19, 1943, a special meeting of so-called directors was held in Milwaukee at the office of Attorney Marshutz. The only stockholders present were Adolph and his sons, Frederick and Carl. The meeting was held without notice to or knowledge of Otto and Gustave. The meeting proceeded on the theory that Otto and Gustave were no longer stockholders. It was assumed that new officers had to be elected to fill the vacancies created by the resignations of Otto and Gustave. At that meeting Adolph was elected president, Frederick vice-president, and Carl secretary-treasurer. The salary of Adolph was fixed at $15,000 per year, and that of Carl and Frederick at $10,000 per year each.
Before the contract was signed Adolph and his two sons were informed and understood that the voting control of the company's stock was in their hands and would continue that way so long as they stuck together. Frederick and Carl soon began by-passing the father's judgment on business matters and more often consulted with Schroeder. Because of Schroeder's influence Attorney Passmore, with whom Schroeder was acquainted, was engaged in August, 1943, to serve the company in a legal capacity. As time went on, Adolph took notice of the fact that he was left out of consultations and that Schroeder was to a large extent taking over the management. Adolph suggested to the sons that they ought to assume more responsibility in the management. For the fiscal year ending September 31, 1943, the company sustained a loss of over $34,000 in the contract division, a new venture initiated by the sons and Schroeder. On April 23, 1943, a contract was entered into by the new officers with Schroeder *Page 116 
for five years based on sales only and not on profit and at the same time giving him supervision off sales and the sales department.
In August, 1943, Frederick and Carl, being doubtful of their ability to meet taxes and to provide funds to make the February, 1944, payments on the optioned stock, consulted with Attorney Passmore, who, on September 23, 1943, advised that the rights of Adolph and his sons under the contract be assigned to the company, and that the company discharge the sons from liability to it for the stock purchased from Otto and Gustave; and that Adolph assign to each of his sons one hundred eleven shares of his stock. On September 29, 1943, Attorney Passmore met with the officials of the company at Kiel, including Schroeder, who is described in the minutes of that meeting as "in charge of operations for the corporation." The plan outlined in Passmore's letter of September 23, 1943, was discussed and consummated.
Subsequent events satisfied Adolph that there was at that time a purpose in the minds of Frederick and Carl to gain control of the company; that Schroeder believed it to be in his interests to bring about that situation and took an active part in the setup. Notwithstanding the fact that the financial situation of the company was then embarrassing, the twenty-five per cent down payment on the purchase of two thirds of the father's stock depleted the treasury of the company another $8,200, and while no payment other than the $8,200 company funds was received by the father, he nevertheless transferred to his sons absolute title to two thirds of his stockholdings without any security.
After Attorney Passmore's plan had been consummated the breach between Adolph and his sons widened and a directors' meeting was called by the sons to be held December 7, 1943, "for the purpose of considering the continued employment of Adolph Stoelting, and to take such action in connection therewith *Page 117 
as may be advisable." This meeting was called by the sons for the purpose of discharging their father. There is no record of any action taken at this meeting. Mr. Passmore's plan was carried out, the stock-purchase agreement was assigned to the company, the company assumed the terms of the contract and released the assignors from liability for the payments made to Otto and Gustave out of company funds, which payments had been charged against the sons on the company books. Neither Otto nor Gustave Stoelting were consulted or informed concerning the proposal of Adolph, Carl, and Frederick Stoelting to assign to the company their rights under the contract of purchase and sale. As a part of this plan the two hundred twenty-two shares owned by the sons were assigned to the company and became treasury stock. At the same time Carl Stoelting procured from Otto and Gustave proxies. These were executed without consideration and for the purpose of validating the acts of the stockholders' meeting of February 19, 1943, held in Milwaukee at the office of Attorney Marshutz. Adolph and his sons were now the owners of one hundred eleven shares each, but with proxies from Otto and Gustave in their possession they were voting all the stock. On February 5, 1944, Frederick and Carl delivered to the escrow bank the company's check for $25,525 for one hundred shares optioned stock from Otto and Gustave.
The by-laws of the company provided that the annual stockholders' meeting be held on the second Tuesday of January each year. None was called for January, 1944. On February 8, 1944, Otto and Gustave served notice of a stockholders' meeting for February 21st, and at the same time served notice of the revocation of the proxies given by them in February, 1943. Within a few days thereafter plaintiffs' first action was begun against the three brothers, and pending its outcome the defendants were restrained and enjoined from holding any stockholders' meeting. The second action followed *Page 118 
soon thereafter. The stockholders' meeting has been adjourned from time to time but no business was transacted and none was attempted to be transacted.
On February 21, 1944, written notice was given to Schroeder, signed "Stoelting Brothers Company, by Adolph Stoelting, President," purporting to discharge Schroeder from the company's employ. On the same day an agreement was signed by Adolph Stoelting, acting for the company as well as for himself, and by Otto and Gustave, that Otto and Gustave were to forthwith take over the management of the business, and for their services each was to be paid $50 per week.
On February 23, 1944, Otto and Gustave secured a temporary injunction order restraining Adolph and his sons from holding any directors' meeting, and the order restrained Schroeder from entering the premises or in any wise interfering with the business of the company. In the meantime Frederick and Carl had directed Schroeder to ignore the notice purporting to discharge him.
About January 1, 1944, Otto and Gustave Stoelting learned of the difficulties between Adolph and his sons, the assignment to the company of the purchase agreement, and the contents of the assignment, and also of the difficult financial situation of the company in connection with these and other matters. Otto and Gustave believed it was necessary for them to protect their interests by the holding of a stockholders' meeting for the purpose of electing directors so that the management of the company might be improved, and to insure its financial stability and business prosperity. The purpose and object of Otto and Gustave in calling the stockholders' meeting for February 21st and proposing to vote their stock was to protect and defend their own rights and interests in the option to purchase contract, and their rights and interests in the corporation, and not to prejudice the rights and interests of Frederick and Carl.
The court further found: *Page 119 
"By using the corporate assets to pay for the stock taken up under the contract and option mentioned above, the company's financial situation was materially impaired; that by reason thereof and of the probable future further depletion of the company's assets and the increase of the company's liabilities, the defendants Otto and Gustave Stoelting were and are justified in calling the stockholders' meeting and voting the stock not already paid for under the above contract and option agreement, the unpaid for stock being now one hundred seventy-two shares owned by Otto Stoelting and one hundred seventy-two shares owned by Gustave."
The court found as conclusions of law that the contract of February 16, 1943, is not ambiguous on its face, it is plain and explicit and leads to no absurd result; that it expresses the intentions of the parties; that Otto and Gustave Stoelting are each entitled to represent and vote one hundred seventy-two shares of stock of said company not purchased or paid for under the purchase and sale agreement; that the proxies given by Otto and Gustave Stoelting are not coupled with an interest and were duly revoked on February 8, 1944; that the meeting of the stockholders called by Otto and Gustave for February 21, 1944, was lawfully called and has been adjourned from time to time and is still under adjournment; that said meeting may lawfully be held after giving not less than five days' notice by Otto and Gustave Stoelting to Adolph, Carl, and Frederick Stoelting, stating the time and place of holding such adjourned meeting; that at such adjourned meeting the defendants Otto and Gustave Stoelting are each entitled to vote and represent one hundred seventy-two shares; that the defendant Adolph Stoelting is entitled to vote and represent one hundred eleven shares; Carl Stoelting, one hundred eleven shares; and Frederick Stoelting, one hundred eleven shares; the balance of the stock is treasury stock and is not entitled to vote.
The court further found that the defendants have not violated the restraining orders issued in these actions; that *Page 120 
each of the restraining orders should be discharged and vacated; that the action for injunctional relief should be dismissed upon its merits. From a judgment accordingly entered on June 21, 1944, plaintiffs appeal.
[1] "This agreement made and entered into this 16th day of February, A. D., 1943, by and between Gustave Stoelting and Otto Stoelting, of the city of Kiel, Wisconsin, hereinafter referred to as the sellers, and Adolph Stoelting, Carl R. Stoelting, and Frederick A. Stoelting, also of said city of Kiel, hereinafter referred to as the purchasers:
"Witnesseth:
"Whereas, Gustave Stoelting, Otto Stoelting and Adolph Stoelting, each now own three hundred thirty-three (333) shares of the issued and outstanding capital stock of Stoelting Brothers Company, a Wisconsin corporation, which nine hundred ninety-nine (999) shares constitutes all the issued and outstanding capital stock of said company; and
"Whereas, the purchasers desire to purchase part of the capital stock of the sellers at this time and obtain an option to purchase the remaining portion of said stock upon the terms and conditions hereinafter set forth, and the sellers are willing to sell on such terms and grant said option;
"Now therefore in consideration of the mutual covenants herein contained, it is agreed between the parties hereto as follows:
"1. Gustave Stoelting and Otto Stoelting each do hereby sell and transfer to the purchasers one hundred eleven (111) shares (or a total of two hundred twenty-two (222) shares in all) of the capital stock of said Stoelting Brothers Company now owned by each, and the purchasers do hereby agree to pay for the same the price of two hundred fifty-five and 25/100ths ($255.25) dollars per share, or a total payment to Gustave Stoelting of twenty-eight thousand three hundred thirty-two and 75/100ths ($28,332.75) dollars, and to Otto Stoelting of twenty-eight thousand three hundred thirty-two and 75/100ths ($28,332.75) dollars, the same to be paid on or before March 15, 1943.
"2. Each of the sellers does hereby grant to the purchasers the option to purchase the remaining two hundred twenty-two (222) shares of said capital stock owned by each at a price of two hundred fifty-five and 25/100ths ($255.25) dollars per share upon the following terms and conditions:
"A. That during each of the four years, to wit: February 16, 1943 — February 16, 1944, February 16, 1944 — February 16, 1945, February 16, 1945 — February 16, 1946, and February 16, 1946 — February 16, 1947, said purchasers shall purchase and pay for not less than fifty (50) nor more than fifty-five (55) shares of said two hundred twenty-two (222) shares retained by Gustave Stoelting, and not less than fifty (50) nor more than fifty-five (55) shares of the remaining stock owned by Otto Stoelting; the purchasers further to purchase and pay for any remaining shares owned by the sellers on February 16, 1947.
"B. If the purchasers shall have purchased from the sellers and paid for not less than one hundred (100) shares (fifty shares from each seller) of said capital stock on which this option is granted by February 16, 1944, and a further one hundred (100) shares (fifty shares from each seller) by February 16, 1945, the purchasers shall at their written request be entitled to a two-year extension as to the remaining stock to be purchased by February 16, 1946, and by February 16, 1947, respectively.
"C. The purchasers in exercising said option shall always purchase and pay for an equal number of shares of each of the two sellers so that the stockholdings of the two sellers will always be the same.
"D. As a consideration of the sellers granting this option the purchasers shall deposit in escrow with the Citizens State Bank of Kiel, Wisconsin, the two hundred twenty-two (222) shares to be purchased and paid for under the provisions of paragraph No. 1 hereof, together with all additional shares which may be purchased pursuant to this option, such escrow agreement to provide that in the event the purchasers fail to purchase and pay for any of the remaining shares of stock owned by the sellers, all their right, title and interest in and to any of the shares of stock so deposited in escrow shall be forfeited to the sellers with no right on the part of the purchasers to recover any portion of the purchase price which they may have paid for any of the shares so forfeited.
"E. Any dividends declared and paid on any of the stock so held in escrow pursuant to this option (whether paid for or not by the purchasers) which are paid on shares of stock issued in the names of the sellers, shall be credited by the sellers as payments made by the purchasers on the purchase price of the stock, subject to this option. so that the purchasers will receive the benefit of the application of said dividends on said purchase price.
"F. In view of the fact that the Citizens State Bank of Kiel, Wisconsin, is to act as escrow holder, it is agreed that all the payments which the purchasers may make under this option shall be made to said bank as agent for the sellers so that the bank will have a record of all payments.
"G. The option granted by this paragraph No. 2 shall not be deemed or construed to impose any covenant on the part of the purchasers, or any of them, to purchase the shares of stock subject to this option, or any part thereof.
"3. The sellers do hereby resign as directors and officers of Stoelting Brothers Company.
"4. The purchasers agree to see to it that Stoelting Brothers Company will give Otto Stoelting employment at a compensation of one hundred ($100) dollars per month, such employment to extend so long as Otto Stoelting shall so desire. The purchasers further covenant and agree that they will see to it that Otto Stoelting retains his present office space, occupied by him in the Stoelting Brothers Company building, as his office, in the city of Kiel, so long as he desires.
"5. This agreement shall be binding upon and inure to the benefit of the heirs, personal representatives and assigns of all parties hereto.
"In witness whereof, the parties hereto have executed this agreement the day and year first above written.

 "GUSTAVE STOELTING (Seal)
 "OTTO STOELTING (Seal)
 (Sellers)
 "ADOLPH STOELTING (Seal)
 "CARL STOELTING (Seal)
 "FREDERICK A. STOELTING (Seal)
"In presence of:
 "L.F. NAUTH
 "HENRY R. CURRIE."

The parties are agreed on the questions involved in this appeal. They are: (1) Have Otto and Gustave Stoelting the right to vote the shares outstanding in their names and deposited in escrow for the election of directors other than Adolph, Carl, and Frederick Stoelting? (2) Are the proxies executed by Otto and Gustave Stoelting to Adolph, Carl, and Frederick Stoelting revocable?
The trial court answered both questions in the affirmative. Appellants contend they should be answered in the negative. Appellants argue that the purchase and sales agreement did not expressly reserve to the sellers, Otto and Gustave Stoelting, any voting rights; that they parted with the physical possession of the stock certificates, indorsed them in blank, and deposited them in escrow with the Citizens State Bank of Kiel.
The escrow agreement contains no restrictions on the voting rights of Otto and Gustave Stoelting of the stock outstanding in their respective names and placed in escrow with the bank. In their brief appellants state:
"It is the position of the plaintiffs that the agreement between the parties was that Otto and Gustave Stoelting were *Page 121 
transferring to Carl and Frederick Stoelting the former's interests in a going business, these interests consisting of a proprietary ownership of the assets of the business and its management and control."
According to the terms of the agreement Otto and Gustave each sold one hundred eleven shares of their stock to Carl and Frederick and gave them an option to purchase annually additional shares. With the two hundred twenty-two shares acquired by Carl and Frederick, plus the three hundred thirty-three shares owned by their father, it gave -the father and his two sons a total of five hundred fifty-five shares of stock out of a total outstanding issue of nine hundred ninety-nine shares; that gave Adolph, Carl, and Frederick control of the corporation.
We are dealing with a corporate entity and any conveyance of interest therein could only be made through a sale and transfer of its capital stock. We cannot now, through a construction of the agreement or otherwise, change the contract of the parties. The contract is plain, unambiguous, and leads to no absurd result.
"When the terms are clear and unambiguous they must control; they are not affected by previous negotiations nor subsequent conduct of the parties." Casgrain v. MilwaukeeCounty, 81 Wis. 113, 118, 51 N.W. 88; Owens v. Hughes,188 Wis. 215, 216, 205 N.W. 812; Schneider v. Allis-ChalmersMfg. Co. 196 Wis. 56, 62, 219 N.W. 370.
It is elementary that an option to purchase corporate stock does not transfer to the optionee the right to vote it. Appellants, in their brief, state that "all the parties understood that Otto and Gustave were no longer stockholders, and that the phraseology of the agreements was to protect the sellers from a heavy income tax." What, then, would become of the four hundred forty-four shares retained by them after selling the two hundred twenty-two shares to Carl and Frederick? *Page 122 
Three days after Carl and Frederick had acquired the two hundred twenty-two shares from Otto and Gustave, Adolph, Carl, and Frederick went to Milwaukee and there held a stockholders' and directors' meeting at the offices of their Milwaukee counsel. It should be said that their counsel, who prepared the minutes of the stockholders' meeting, assumed that all of the stock belonging to Gustave and Otto Stoelting had been acquired by Carl and Frederick Stoelting. This stockholders' meeting at Milwaukee on February 19, 1943, was held without notice to, or knowledge of, Otto and Gustave Stoelting.
Thereafter, late in September or the forepart of October, 1943, plaintiffs' counsel advised that a proxy be obtained from Gustave and Otto Stoelting, which was done and was antedated to February 16, 1943. Counsel also advised that a waiver of notice of the meeting of February 19, 1943, be obtained from Otto and Gustave. The trial court found that the proxy procured from Otto and Gustave and antedated was so procured for the purpose of validating the acts of the stockholders' meeting held in the Milwaukee office of the company's counsel on February 19, 1943. The court further found as a conclusion of law that the proxy given by Otto and Gustave was not coupled with an interest and was duly revoked on February 8, 1944. Carl Stoelting, being examined adversely as to the purpose of obtaining the proxy from Otto and Gustave, testified:
"Q. Why did you order the proxy dated back? A. Because until that proxy was executed the proceedings of the corporation had been a mess.
"Q. Which proceedings? A. The first stockholders' meeting.
"Q. Why was it a mess? A. Because it had gone on the assumption that Adolph, Fred and Carl were all the voting stockholders.
"Q. So you got a proxy dated — executed and delivered some time in September, 1943, and dated it back as of the 16th of February, 1943? A. Right. *Page 123 
"Q. Is that correct? A. Correct.
"Q. Did you order and direct that that be done? A. Yes, I did.
"Q. Did you discuss it with your father? A. I did.
"Q. When? A. Before the proxy was even drawn.
"Q. What did you say to him? A. It was explained by Attorney Passmore that it was necessary to take this step so that all previous stockholders' meetings since the 16th of February, 1943, be in proper order.
"Q. Are you sure that that was the only reason you got that proxy? A. Positively.
"Q. You mean to tell me that the only reason you got this proxy and had Otto and Gustave sign it was to make the stockholders' meeting of February 19, 1943, legal? A. Yes, sir, that was the only reason.
"Q. For no other reason? A. No, sir.
"Q. You are sure about that? A. Positive."
Can there be any doubt as to the specific purpose in procuring the proxy from Otto and Gustave? The above testimony is that of the secretary, and he explains in no uncertain language the reason for procuring the proxy. Furthermore, there was no occasion other than as indicated for getting a proxy from Otto and Gustave, because at that time Adolph and his two sons had the controlling vote. It further appears that when the contract was signed both the company's auditor and Attorney Currie, who prepared the purchase and sales agreement, stated that Otto and Gustave retained the right to vote their unpurchased stock.
The trial court's decision and findings disclose a careful study and analysis of the evidence. The findings are amply sustained by the evidence and call for an affirmance of the judgment.
By the Court. — Judgment affirmed. *Page 124