## Kentucky-Virginia Stone Co., Inc., v. Casteel.

Oct. 20, 1942.

Wm. A. Hamm and James W. Smith for appellant.

Sylvester V. Little and J. R. Llewellyn for appellee.

Opinion of the Court by Judge Rees—Affirming.

On August 25, 1939, the appellee, Lewis Casteel, entered into a written contract with appellant, Kentucky-Virginia Stone Company, the material part of which reads:

"The said party of the first part, Lewis Casteel, hereby agrees to unload and transport sand, stone and cement from a railroad car at the L. & N. Railroad tracks at East Bernstadt, Kentucky, to Road No. FAS414 located in Laurel and Jackson Counties, Kentucky, at the rate of Sixty Five cents (65c) per ton; and the said first party, Lewis Casteel, further agrees to transport concrete tile from Lexington, Kentucky, to said Road No. FAS414 in Laurel and Jackson Counties, Kentucky, at the rate of Two Dollars and Forty Cents ($2.40) per ton."

The Kentucky-Virginia Stone Company had entered into a contract with the Kentucky State Highway Commission for the construction of a highway in Laurel and Jackson counties known as the East Bernstadt-Bond road. On January 17, 1941, Lewis Casteel brought this action in the Laurel circuit court against the Kentucky-Virginia Stone Company to recover $2,326, alleged to be the balance due under the contract. The defendant, in its answer, denied that it was indebted to the plaintiff in any sum in excess of $226.90, and it tendered to him that amount. It alleged that the written contract applied only to the stone, sand, cement, and tile necessary for the completion of the culverts and bridges on the road mentioned in the contract, and after the stone needed for that purpose had been hauled a new contract was entered into between the plaintiff and defendant whereby it was orally agreed that the defendant would haul the stone needed for constructing a traffic-bound surface at 40c a ton, and that it was mutually agreed between them that the original contract was thereby modified and terminated as to the amount mentioned in it for hauling stone. It was alleged that the oral agreement was made on or about June 27, 1940. There is no dispute as to the

amount of stone hauled by plaintiff. He hauled a total of 10,548.46 tons, and if the price for hauling was 65c a ton he was entitled to $6,856.49. He was paid the sum of $4,530.49, leaving a balance of $2,326 claimed by him. Subsequent to June 8, 1940, he hauled 8,409.85 tons of stone, referred to in the record as traffic-bound stone, and he claimed that under the written contract he was to be paid at the rate of 65c a ton for this stone, while the defendant claimed that he was to receive only 40c a ton under the oral agreement of June 27, 1940, which superseded the written contract. The plaintiff denied that such an oral agreement was made. This was the sharp issue made by the pleadings. On the trial of the case the jury returned a verdict for the plaintiff.

On this appeal appellant's chief contention is that the evidence conclusively establishes that the oral agreement terminating the written contract and fixing the price for hauling traffic-bound stone at 40c a ton instead of 65c a ton was entered into, and therefore the verdict of the jury is without evidence to sustain it. W. B. Paynter, president of the Kentucky-Virginia Stone Company, testified that after the stone, sand, and cement necessary to build the culverts, bridges, and drains had been hauled a new contract was entered into with Casteel for hauling the traffic-bound stone for which he was to be paid at the rate of 40c a ton. On June 20, 1940, the company gave to Casteel a check for $715.20 with this notation thereon: "For hauling week ending June 15, 1940, at East Bernstadt, Ky." Attached to the check was an itemized statement of the amount of stone and other material which had been hauled. It included 985.05 tons of "traffic-bound stone unloaded by Lewis Casteel week ending June 15." 115.40 tons of sand and cement were included in the statement, making a total tonnage of 1,100.45 which was paid for at the rate of 65c a ton. On July 9, 1940, the company issued to Casteel a check for stone hauled by him between June 18 and July 6. During this time he had hauled 1,157.01 tons of traffic-bound stone. In a statement attached to the check it appears that the amount due was calculated at the rate of 40c a ton. The statement also showed an adjustment for an overpayment in the check of June 18, the adjustment made being the difference between the amount paid at the rate of 65c a ton and the amount calculated at 40c a ton. The difference of $246.26 was deducted from the check dated July 9, 1940. Thereafter checks were de-

livered to Casteel with itemized statements attached showing the number of tons hauled and that the check was for that number of tons calculated at 40c a ton. The job was completed about August 1, 1940, and on August 3 the company mailed to Casteel a check for $226.90 for 567.25 tons of traffic-bound stone at 40c a ton. Casteel refused to accept the check in final settlement and returned it to appellant.

The acceptance by Casteel of the checks with statements attached showing that payment was being made at the rate of 40c a ton strongly corroborates W. B. Paynter and supports appellant's claim that the written contract was abandoned and a new contract made between the parties in June, 1940. F. W. Graham, appellant's superintendent, testified that he was not employed by the company when the written contract of August 25, 1939, was made, and before Casteel began hauling the traffic-bound stone he asked him if the written contract included it and Casteel said he thought it did. Graham authorized payment on the contract at 65c a ton on June 15, 1940, for the first week's hauling, and the check was sent to him and he delivered it to Casteel. Graham discussed the matter with W. B. Paynter on June 26 or 27, and on the following day he met Casteel on the road near the bridge over Rockcastle river. Graham testified that on this occasion he informed Casteel he had discussed the matter with W. B. Paynter and they felt that the price of 65c a ton was too high for hauling traffic-bound stone, and that 40c a ton was fair to both parties. Casteel said: ''Well, I guess I will have to haul it.'' Casteel denied that he consented to any modification of the written contract. He testified that in July, 1940, Graham told him the company wanted him to haul the traffic-bound stone for 40c, but Casteel told Graham that he had a contract for 65c and was going to hold out for it. Graham told him that some truck owners in Virginia would haul the stone for 40c, and he answered that they should be willing to haul for that price since he had done the hard hauling during the winter in bad weather and had lost money on that part of the contract. He admitted accepting the checks with the itemized statements attached. When the first check showing that he was not being paid at the rate of 65c a ton was delivered to him he refused at first to accept it, but Graham told him ''to go ahead that the Kentucky-Virginia Stone Company would pay me and to take that as a payment on what

they owed me," and that "the company would do me right about it, that it was due me." Dan Medlock testified that he was present when Graham and Casteel had a conversation concerning the price to be paid for hauling traffic-bound stone. Graham said: "They are wanting to cut you in the office," but Casteel said he was going to haul according to his contract and Graham told him to go ahead and haul the stone and the company "would do him right." Andrew Gabbard, an inspector for the State Highway Department, testified that Graham told him in July that the company was paying Casteel 65c a ton for hauling stone.

The testimony on the only issue in the case was conflicting. There were circumstances which strongly tended to support appellant's witnesses and their version of the controversy, and were we sitting as a jury we, no doubt, would accept appellant's theory of the case, but there was substantial evidence in support of appellee's claim that he had contracted to haul the stone at 65c a ton and that the contract was never altered. The case turned on the credibility of the witnesses, and, as we have uniformly held, the determination of this question was for the jury and not the court. It follows that the trial court did not err in overruling appellant's motion for a directed verdict in its favor.

Appellant complains because the court refused to permit it to prove by two witnesses that 40c a ton was a reasonable price for hauling the stone. The issue was whether the written contract had been abrogated and a new contract made, and the offered testimony was not relevant to this issue and was properly rejected. Appellant also complains because the court overruled his objections to certain evidence, but we find no prejudicial error in this respect. A number of statements made by appellee's attorney in his closing argument to the jury are criticized, but we have examined the bill of exceptions and find that in every instance in which the propriety of a statement was even questionable the court sustained appellant's objection and admonished the jury not to consider it.

The instructions given by the court presented the only issue in the case clearly and concisely, and a careful examination of the record convinces us that a fair and impartial trial was had.

The judgment is affirmed.