HAUGHTON ELEVATOR COMPANY, a Division of Toledo Scale Corp., a Corporation, Plaintiff-Respondent,

v.

C. RALLO CONTRACTING COMPANY, Inc., a Corporation, and Martin-Steven Realty Company, a Corporation, Defendants,

and

C. Rallo Contracting Company, Inc., a Corporation, Defendant-Appellant.

No. 31923.

St. Louis Court of Appeals

Missouri.

Sept. 21, 1965.

Karol Korngold, St. Louis, for defendant Martin-Steven Realty Co.

Guilfoil, Caruthers, Symington, Montrey & Daniel, H. Jackson Daniel, Bernard A. Ruthmeyer, St. Louis, for defendant-appellant.

Armstrong, Teasdale, Roos, Kramer & Vaughan, Donald U. Beimdiek, St. Louis, for plaintiff-respondent.

ANDERSON, Judge.

This is an action by Haughton Elevator Company against C. Rallo Contracting Company, Inc., and Martin-Steven Realty Company. The claim against Rallo was for $4,019.00, the balance alleged to be due under a contract with Rallo for the installation of a hydraulic elevator in a building belonging to Martin-Steven Realty Company. As against Martin-Steven Realty Company, plaintiff sought to establish a mechanic's lien on the real estate on which the building was being erected. Rallo filed a counterclaim to recover damages alleged to have been suffered by said defendant by reason of negligent delay in the performance by plaintiff of its work under said contract; said damages being penalties, provided for in the general contract, for delay by Rallo in completing the building, which penalties were paid by Rallo. The case was tried to the court, and resulted in a finding in favor of plaintiff against Rallo in the sum of $3,500; in favor of plaintiff on Rallo's counterclaim and in favor of defendant Martin-Steven Realty on plaintiff's action to establish a mechanic's lien on its property. Defendant, C. Rallo Contracting Company has appealed.

The amount sought to be recovered was the cost above the contract price of the installation specified in the contract between plaintiff and Rallo, and claimed to be due under said contract for the reason that in drilling a hole under the building, which hole was necessary to the operation of the hydraulic elevator, rock was encountered which made the drilling more difficult and time consuming, causing plaintiff to expend additional sums for labor and material, and necessitated the employment by plaintiff of another firm to complete the operation. The hole in question was 19½ inches in diameter and approximately 44 feet in depth. It is referred to in the evidence as a "jack hole." According to plaintiff's evidence rock was encountered at the depth of 17 feet, and was present during the remainder of the operation. Plaintiff's claim was for the entire cost of drilling from the depth of 17 feet to completion. The claim is based on a provision of the architect's specifications for the building, considered a part of the contract between plaintiff and Rallo, which provides that as to said

jack hole, the contract price is based on the encountering of soil free from certain conditions including rock, and that if such obstruction or unusual conditions be encountered the contract price would be increased by the amount of actual cost of labor and material, plus 10% and 10%.

Defendant Rallo Contracting Company entered into a contract with Sylmar Investment Company to construct an apartment building at 4530 West Pine Boulevard. In December, 1960, defendant Martin-Steven Realty Company became the owner of the aforesaid property.

Rallo took bids from other contractors for the installation of the elevator to be installed in said building. Haughton Elevator Company submitted a bid for this work in a letter dated September 24, 1959. This bid recited:

"We are pleased to quote the sum of SIXTEEN THOUSAND FOUR HUNDRED FORTY NINE DOLLARS ($16,449.00) to furnish and install one (1) Haughton Oil Hydraulic Passenger Elevator at the above subject location. (4530 West Pine) We have included an allowance for drilling the well hole in ordinary soil.

"Our equipment is in strict accordance with the plans and specifications as prepared by Mr. Edward Gordon, Architect.

"This proposal is subject to the terms and conditions of our regular contract forms. A detailed proposal will be furnished upon request."

On January 26, 1960, a contract was entered into between the parties, the material portions of which are as follows:

"For the consideration hereinafter named, the said Sub-contractor covenants and agrees with said Contractor, as follows:

"FIRST. The Sub-contractor agrees to furnish * * * and install eleva-

tor according to revised plans and specifications and Addenda 1 and 2, for:

> 4530 Apartment Building
> 4530 West Pine Boulevard
> St. Louis, Missouri

* * * according to the plans and specifications * * * of Edward Francis Gordon, Architect, and to the full satisfaction of said Architect.

\* \* \* \* \* \*

"FIFTH. No extra work or changes under this contract will be recognized or paid for, unless agreed to in writing before the work is done or the changes made.

\* \* \* \* \* \*

"IN CONSIDERATION WHEREOF, the said Contractor agrees that he will pay to the said Sub-contractor, in payments, the sum of *SIXTEEN THOUSAND FOUR HUNDRED FORTY-NINE AND 00/100 ($16,449.-00)* Dollars for said materials and work, said amount to be paid as follows: *Eighty-five per cent (85%)* of all labor and material which has been placed in position by said Sub-contractor, to be paid on or about the *Fifteenth* of the following month, except the final payment, which the said Contractor shall pay to the said Sub-contractor within *Thirty* days after the Sub-contractor shall have completed his work to the full satisfaction of the said Architect or Owner."

The plans and specifications of the architect, referred to in the above mentioned contract contained the following:

"1. *GENERAL REQUIREMENTS*

(a) The provisions of the General Conditions apply to each Section of the specifications and the provisions of the General Conditions shall be fully complied with by all contractors and sub-contractors.

\* \* \* \* \* \*

"3. DEFINITIONS

Whenever used in any of the Contract Documents, the following meaning shall be given the terms as herein defined:

\* \* \* \* \* \*

(c) Contractor: Wherever, and whenever term 'Contractor' is used in these specifications, it shall be understood to designate party or parties who will be awarded a contract to furnish work under these specifications, and any subcontractor engaged by him to perform portions of work under contract.

\* \* \* \* \* \*

"9. EXTRAS

Any contractor contemplating any work which may involve an extra charge to the owner, shall first obtain permission in writing from the owner or his representative authorizing the extra and stating the amount of same before any work is started or material supplied."

Under the heading "Elevator," the specifications provide:

"1. GENERAL

This specification is intended to cover the complete installation of 1 Electric Oil-hydraulic (electrically operated hydraulic elevator, using oil as the fluid medium) passenger Elevator, as manufactured by Rotary Lift Company, Memphis Tennessee, Haughton Elevator Company, Toledo, Ohio, or equal as approved by the Architect and/or Owner. The general contractor is to list in his bid the make of elevator proposed and the allowance set up for same. All work including the accessory items listed herein shall be performed in a first-class and workmanlike manner, and is to include all materials and work as shown on the drawings or described hereinafter.

\* \* \* \* \* \*

"18. JACK HOLE

The contract price is based on the Seller encountering soil free from rock, boulders, building construction members, sand, water, quicksand, underground caves or any other obstructions or unusual conditions when installing the jack. Should such obstructions or unusual conditions be encountered, the contract price shall be increased by the amount of actual cost of labor and material, plus 10% and 10%."

Plaintiff's agent, Marvin W. Selsor, testified that he looked at the specifications in the office of Mr. Gordon, the architect, and that plaintiff's bid was based on the specifications. Mr. Ernest F. Stabler, district manager for plaintiff also read said specifications and the contract between plaintiff and Rallo, prior to starting the job.

According to plaintiff's evidence the drilling equipment was moved onto the job on August 3, 1960, and the actual drilling started on August 5th. A 19½ inch auger drill was used at the beginning. This type of drill rotates and digs itself into the ground. The material that is dug out is withdrawn from the hole by pulling the drill from the hole and removing it from the spirals on the drill.

James T. Quinn, an employee of Haughton was in charge of the work. His helper was Sam J. Castello. Quinn testified that when they first started drilling no unusual conditions were encountered but on August 10th and at 17 feet, they ran into gumbo with rock mixed in it. Prior thereto they ran into water difficulties.

After encountering rock, Quinn continued to drill with the 19½ inch auger, but did not make much progress. He then changed to a 6 inch auger to drill a lead hole. The hole at the time was around 30 feet deep. After drilling with the 6 inch auger they ran into difficulties with it. The auger broke, and part of it was lost in the hole. This happened on August 26th. After this occurred they spent four or five days trying to retrieve the broken part but were unsuccessful. When the auger broke they were within four feet of completing the hole. Quinn further testified that at 30 feet they ran into something more solid than gravel and when the auger broke they were drilling in solid rock. The testimony of Quinn was corroborated by the helper, Mr. Castello.

Marvin W. Selsor, sales engineer for Haughton testified that Mr. Gordon, the architect, called him on the phone and asked him why there was a delay in the drilling; that he told Gordon that he did not know there was a delay, but would find out and advise him as to the cause; that he went to the job and found the drillers were having trouble because of rock conditions, and the breaking of a drill bit; that he observed rock at the job site, which looked like flint rock; that he also noticed a heavy sort of gumbo type mud.

Ernest F. Stabler, district manager for Haughton, testified that in drilling the jack hole they encountered boulders at about 17 feet, and he observed rock in the debris which was piled up around the hole.

■ On this appeal Rallo does not contend that plaintiff did not encounter rock in drilling the jack hole. At the trial, however, Charles Rallo testified he was never shown any rock, nor did he see any rock being brought up the hole. He also testified he was never told that the drilling had been delayed by reason of rock. He further testified that four test holes were dug before the construction was started, one at each corner of the proposed building. They were dug from ground level. The

jack hole was started in a pit in the basement. The basement was 10 feet below ground level. One hole was dug to a depth of 45 feet. At 30 feet there was a light deposit of large gravel. Another of the holes was dug to a depth of 30 feet. No rock was encountered, but small gravel was encountered at 15 feet. The third hole was dug to a depth of 35 feet, and the fourth to a depth of 40 feet. No rock was encountered in digging either hole. Edward Gordon, the architect, testified that he saw a lot of mud and dirt at the jack hole and something that appeared to be gravel, but he never saw any rock there. He also stated that none of Haughton's men ever told him they encountered rock in drilling the jack hole. In our judgment the weight of the evidence supports plaintiff's position on the above mentioned issue.

After plaintiff abandoned the attempt to retrieve the bit from the hole plaintiff employed Haverstick Well & Equipment Company to complete the drilling of the jack hole. The method employed by the latter was percussion drilling which pounded down the lost bit and pulverized the rock in the jack hole. Haverstick came on the job around September 1 and completed the drilling. Thereafter plaintiff billed Rallo for the cost of drilling the hole from 17 feet to its completion. This amount included the cost of its own labor, the amount paid by it to Haverstick, the cost of gasoline for drilling through rock, plus 10 per cent and ten per cent as provided in Division 25, Section 18 of the contract specifications. This was the amount sued for. It was conceded by counsel for defendant Rallo in his opening statement that if plaintiff was entitled to additional compensation the amount alleged was correct. The judgment rendered was less than the amount sued for.

Appellant's first point on this appeal is that plaintiff is not entitled to recover because it failed to give notice to appellant of its intention to drill through rock at "extra" charge before undertaking the work, or secure an agreement in writing

from defendant before undertaking the work.

In support of the above mentioned contention defendant relies on the fifth paragraph of the subcontract which we have heretofore set out, which provides that no extra work or changes under the contract will be paid for unless agreed to in writing before the work is done or changes made.

Appellant contends that by plaintiff's own admission, it never gave written notice to it, or obtained written permission for performing the extra work of drilling through rock. Further, it is argued that in a letter to C. Rallo Contracting Company dated October 5, 1960, plaintiff indicated it considered charges for drilling through rock as for extra work, thus placing a construction on the contract which is binding on plaintiff. This letter was addressed to the attention of Charles Rallo, and was as follows:

"Dear Sir:

"Under the terms of our contract with you and complying with the specifications on the above job we wish to advise the following:

"1. An extra charge based on the expense involved, etc. will be charged for drilling of the well-hole for the elevator in the above building, through other than normal soil.

"2. Abnormal soil conditions; namely blue, very gummy, wet, mud and hard flint rock were encountered at 17 feet on the 10th day of August.

"3. An extra charge will be submitted to cover the above.

"4. Invoice will be submitted from our Toledo office.

"5. Your Job Supt., Mr. Leo Toomey, was notified of the above conditions.

"If you have any questions concerning the above please contact us."

The above letter was signed by M. W. Selsor, Sales Engineer. The reference to the specifications in said letter relate to Division 25, Section 18, which we have heretofore set out which provides for an increased charge over the contract price if rock or other unusual conditions are met in installing the jack.

A like argument is based on a letter dated December 2, 1960, sent by plaintiff to appellant. This letter reads as follows:

"Under the terms of our contract and in compliance with the specifications as prepared by Edward Gordon, Architect we here-by submit the amount extra for drilling well hole through rock, above project.

"This charge in the amount of $4,-313.94 will be added to the original contract price and submitted to you with out next request for payment.

"Specifications state any items extra for drilling through rock will be paid by the owner. We are therefore submitting a copy of this letter to the Sylmar Investment Company."

It is further argued that the above theory is bolstered by the fact that plaintiff's witnesses, who were employees of Haughton, throughout their testimony, referred to "extra" charges as a result of encountering rock during the process of drilling, and that the color of the time tickets used after August 10 indicated the charges were "extra" over the contract price. Mr. Stabler, the district manager for Haughton, testified that pink time tickets which were used after August 10, are used when there is a development on the job that calls for payment above the contract price.

The foregoing arguments advanced by appellant are not convincing. The fact that plaintiff and its witnesses referred to the additional charge for drilling through rock as an extra charge does

not make the work performed "extra" work. The contract does provide that extra work must be agreed to in writing before the work is done but we do not deem that the drilling through rock was extra work. Extra work, as used in connection with building contracts, means work of a nature not contemplated by the parties and not controlled by the contract. 17A C.J.S. Contracts, § 371(6), p. 411; Casgrain v. Milwaukee County, 81 Wis. 113, 51 N.W. 88. "Extra" work is work entirely independent of the contract, something not required in its performance. Kansas City Bridge Co. v. State, 61 S.D. 580, 250 N.W. 343; Michaud v. McGregor, 61 Minn. 198, 63 N.W. 479; Ashley v. Henahan, 56 Ohio St. 559, 47 N.E. 573. Additional work is something necessarily required in the performance of the contract, and without it the work could not be carried out. By the contract Haughton had an obligation to complete the jack hole to the required depth to receive the jack unit. It was work required by the contract regardless of whether rock was or was not encountered. The work under the subcontract was by its terms to be completed according to the plans and specifications of the architect. Those plans and specifications contemplated the possibility that the jack hole might be drilled through rock, and by Division 25, Section 18, it is provided that if rock is encountered the contract price would be increased by the actual cost of labor and material in doing said work plus 10% and 10%. While the application of this provision may appear harsh, such was the contract entered into by the parties and we see no valid reason why it should not be enforced. The subcontract provided that plaintiff agreed to install the elevator according to the plans and specifications. We cannot construe this to mean only those provisions of the plan and specifications favorable to defendant. All said provision must be deemed to have been incorporated into the subcontract by reference. According to its terms the cost for drilling through rock is an amount due in addition to the contract price for the installation of the elevator. The trial court did not err in holding that drilling through rock was covered by the contract, and required no agreement in writing under Section 5 of the sub-contract, or written permission from the owner for the extra charge before the work was started under Division 3, Section 9 of the plans and specifications. The extra charge was a matter of contract which specified the method for ascertaining same.

■ Defendant's next point is that the trial court erred in rendering judgment in favor of plaintiff in the sum of $3500 because said judgment was against the weight of the evidence, which showed said charge to be unreasonable and excessive.

The amount billed by Haughton for the cost of completion of the hole below the depth of 17 feet totaled $3,725.00, which according to plaintiff's evidence, was less than the sum due figured according to Section 18 of Division 5 of the specifications. This included the charge of $1,914.00 paid by plaintiff to Haverstick. The charge made by plaintiff for its work included sums actually expended by it for labor and material.

■ The complaint made is without merit. The contract provided that under the conditions encountered the contract price would be increased by the actual cost of labor and material, plus 10% and 10%. The law is well settled that where a contract contains an express stipulation as to the amount of compensation to be paid for its performance, such stipulation is conclusive on the parties and determines the amount of recovery. 17A C.J.S. Contracts § 362, p. 366; Isaac T. Cook Company v. Bank of St. Louis, Mo.App., 297 S.W.2d 607. And the fact that defendant produced evidence that the hole could have been drilled for less than the cost to plaintiff, should not be considered. It is the general rule that in an action in an express contract where the amount of com-

pensation is fixed, evidence of the reasonable value of the services rendered under the contract is inadmissible. Garvin-Melton Co. v. E. W. Fowler Co. (Tex.Civ.App.) 292 S.W. 976; McManus v. Kucharo et al., 219 Iowa 865, 259 N.W. 926; Kentucky Virginia Stone Co. Inc. v. Casteel, 291 Ky. 645, 165 S.W.2d 348; Cross v. Ramdullah, (C.C.A.9th) 274 F. 762. The rule is stated in 17A C.J.S. Contracts § 601, p. 1174, as follows:

" * * * Thus, where price to be paid for work performed is ascertained by a method of measurement specified by the contract, it is not open to one party to the contract to introduce evidence as to another method of measurement for the purpose of showing that a different price should be paid."

Defendant did not dispute the fact that plaintiff's cost for drilling through rock was the amount for which it sued. On the contrary defendant's counsel in his opening statement conceded the amount to be correct. There was no plea of fraud or evidence thereof introduced by defendant. Therefore, in view of all the facts and circumstances appearing in the record and the law applicable, we are unable to say that the charge made by plaintiff was unreasonable and that the judgment was therefore against the weight of the evidence, as defendant contends.

Defendant contends that plaintiff is estopped from making its claim against defendant for the reason that plaintiff's failure to notify defendant of the contemplated work makes it impossible for defendant to secure reimbursement from the owner, the only person who benefitted by said work. This contention is based on the theory that drilling through rock was "extra work," which we have heretofore held was not the case.

 Civil Rule 55.10, V.A.M.R., provides that estoppel is an affirmative de-

fense which must be pleaded. An examination of defendant's answer reveals no such defense pleaded. The case was not tried on the theory that plaintiff was estopped, and no facts were proved that would constitute an estoppel. The issue cannot now be considered, since not presented below.

The final assignment of error specified in the points relied on is that the trial court erred in ruling that time was not of the essence in the subcontract, for the reason that the completion date, for the construction of the building specified in the plans and specifications were incorporated into the subcontract by reference. This is tantamount to a charge that recovery could not be had on the contract because of non-compliance with a condition precedent namely completion of the work by October 1, 1960, the date specified in the plans and specifications for the erection of the building.

 In its argument defendant has abandoned this point by stating that, " * * * Defendant's position was not, and is not, that time was of the essence of the contract and, therefore, the contract must fail because not performed on time, but rather that the time requirements constituted an independent agreement on account of which compensation and damages are recoverable * * *." From this premise it is argued that the court erred in not finding for defendant on its counterclaim for damages for unreasonable delay in the installation of the elevator and negligence in the performance of said work which caused delay in the completion of the building resulting in the infliction of penalties against defendant, for which judgment was prayed in the sum of $12,000. The foregoing contention is not based on any assignment of error contained in "Points Relied On." We will, therefore, not consider said contention since assignments of error made for the first time in

the "Argument" portion of the brief come too late.

Finding no error in the record the judgment is affirmed.

RUDDY, P. J., and FRANK D. CONNETT, Jr., Special Judge, concur.