## MOFFETT v. COMMERCE TRUST CO. et al.
### No. 14115.

United States Court of Appeals
Eighth Circuit.

Feb. 26, 1951.

Rehearing Denied March 16, 1951.

Martin J. O'Donnell, Kansas City, Mo., for appellant.

James E. Goodrich, Kansas City, Mo. (Hugh M. Hiller and Philip J. Close, Kansas City, Mo., were with him on the brief), for appellee Commerce Trust Co.

Orlin A. Weede, Kansas City, Mo. (Walter A. Raymond and R. Carter Tucker, Kansas City, Mo., were with him on the brief), for appellees Helen Weede and Orlin A. Weede.

B. C. Howard, Kansas City, Mo. (Wm. Dennis Bush, Kansas City, Mo., was with him on the brief), for B. C. Howard and William H. Kopp.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

This is an appeal from a judgment dismissing the complaint in a civil action under the Civil Rights Act, 8 U.S.C.A. § 43 et seq., for failure to state a claim upon which relief could be granted. Jurisdiction of the Federal court is asserted under 28 U.S.C.A. § 1343.

The action is brought by Louise McGrew Moffett, individually and as executrix of the estate of her deceased husband, Thomas S. Moffett, against Commerce Trust Company, its attorney B. C. Howard, Helen Weede, formerly Helen Moffett, widow of John Moffett, deceased, Orlin A. Weede, present husband of Helen Weede and her attorney, and Kopp and Copman, accountants employed in auditing the accounts of the businesses in which Thomas S. and John Moffett were interested during their lives. All of the defendants participated as parties, attorneys, or witnesses in litigation arising out of the administrations of the estates of John and Thomas S. Moffett and of the estates of the partnerships of which they were members. The litigation has been in progress in the courts of Missouri, Kansas, and Oklahoma since 1928.

The complaint alleges that John and Thomas S. Moffett were for more than 30 years prior to 1927 engaged individually and as partners in ranching operations and related businesses in Missouri, Kansas and Oklahoma, where they had extensive holdings in real and personal property. They were associated in the following partnerships:

1. Moffett Brothers, which was owned equally by them;

2. Moffett Brothers and Andrews, in which each of the brothers and Andrews owned a one-third interest; and

3. Moffett Brothers Cattle, Land and Lumber Company, which was owned in association with their brothers, Renwick J. and Joseph W., in equal shares.

Thomas Moffett also was engaged in business through the partnership of Andrews, Lewis and Moffett, and, together with his brothers, was interested in a corporation known as Moffett Brothers and Andrews Commission Company. All of these enterprises kept a common office and common set of books in Kansas City, Missouri.

John Moffett died on August 23, 1927, leaving a will prepared by B. C. Howard, as trust officer and attorney for the Commerce Trust Company, in which Thomas S. Moffett was appointed executor and the Commerce Trust Company alternate executor. The will executed one day prior to John Moffett's marriage to Helen Weede devised all his property to his relatives with the exception of a bequest of $5,000 to Helen Weede.

Thomas S. Moffett was appointed executor under the will of John Moffett, deceased, by the Probate Court of Jackson County, Missouri. He also undertook to administer upon the assets of the partnerships in Missouri, Kansas, and Oklahoma, acting in this capacity in Missouri under his powers as surviving partner, and in Kansas and Oklahoma by court appointments. In November 1928 the Probate Court of Jackson County removed Thomas S. Moffett as executor under the will of John Moffett and as administrator of the Moffett partnerships, and substituted the Commerce Trust Company in his place.

Thomas S. Moffett died on December 22, 1930, leaving plaintiff, Louise McGrew Moffett, as surviving widow and sole beneficiary under his will. In January 1931 Louise McGrew Moffett was appointed executrix of the estate of Thomas S. Moffett by order of the Probate Court in Missouri, and her sister, Grace Torrance Clark, was appointed administratrix of his Kansas estate by order of a Kansas probate court. Mrs. Clark was also appointed by Kansas courts to administer upon the Kansas assets of the partnership estates of Moffett Brothers and Andrews, Andrews, Lewis and Moffett, and Moffett Brothers in Kansas; but in further court proceedings was removed and succeeded by L. B. Andrews, surviving partner of Moffett Brothers and Andrews, and Andrews, Lewis and Moffett, and by R. O. Robbins in the administration

of the Moffett Brothers partnerships in Kansas.

The complaint charges a conspiracy of defendants to deprive plaintiff and her husband, Thomas S. Moffett, of their property without due process of law and to deny to them the equal protection of the laws, as follows:

" * * * This action is for damages caused by overt acts done and caused to be done pursuant to a conspiracy to which defendants were parties, and who conspired for the purpose of impeding, hindering, obstructing and defeating the due course of justice in the States of Missouri, Kansas and Oklahoma, with intent to deny Thomas S. Moffett and plaintiff, as citizens of the United States, the equal protection of the laws, and pursuant to which said Thomas S. Moffett and plaintiff were purposefully discriminated against by said States through their agents and thereby deprived of the equal protection of the laws, and pursuant to which said conspirators did and caused to be done acts under color of statutes of said States, which subjected Thomas S. Moffett and plaintiff, within the jurisdiction of said States, to the deprivation of rights, privileges and immunities secured to them by the United States Constitution and laws, by reason whereof defendants became liable to Thomas S. Moffett and plaintiff as injured parties within the meaning of Sections 43, 47 and 48 Title 8 U.S.C.A., and Section 1 of the XIVTH Amendment to the United States Constitution. Two of said conspirators acted as officers of the State of Missouri under color of its laws, and two as officers of the State of Kansas under like color, as hereinafter more fully appears. Those conspirators who were not officials of said States materially and physically participated in said conspiracy, and in all the overt acts of said State officials done pursuant to said conspiracy, and have joined in and adopted the said conspiracy as their own.

* * * * * *

"5. Commerce Trust Company, as executor of the estate of John Moffett and as administrator of said partnership estates, at all times hereinafter mentioned, acted as an officer of the law and of the State of Missouri, and exercised the power of said State under color of its statutes, constitution and laws. An ancillary administrator of the John Moffett estate, and alleged ancillary administrator of Moffett Brothers partnership estate in Kansas, acted as an officer of the State of Kansas, and the repository of the power of the State of Kansas, and exercised such State power under color of the constitution, statutes and laws of the State of Kansas. The then judge of the district court of Harper County, Kansas, was an elected and acting judge of the district court of said State, and invested with and exercising the power of the State of Kansas under its Constitution, statutes and laws. All of which state officers wilfully, intentionally and purposefully discriminated against Thomas S. Moffett and plaintiff and in favor of defendants, in the application of said statutes, constitution and laws, as hereinafter more fully appears.

* * * * * *

"9. Said conspirators agreed that said conspiracy would remain in existence and continue until said conspiracy had accomplished its purpose by misappropriating all of the property in which Thomas S. Moffett and plaintiff were interested or owned, and especially in the businesses and property in which John and Thomas Moffett had any interest, and part of which property was devised and bequeathed by John Moffett to Thomas S. Moffett, and some of which was by Thomas S. Moffett devised and bequeathed to plaintiff. The purpose of said conspiracy has not yet been fully accomplished, in that said defendants have not yet fully deprived plaintiff of all of said properties; but said purpose has been in process of accomplishment from the beginning, and is now in the process of being accomplished, as hereinafter more fully appears.

* * * * * *

"58. As a direct result of said acts done and caused to be done by said defendants, pursuant to and in furtherance of said corrupt, continuing, unabandoned and still existing conspiracy, under color of the statutes, laws, customs and rules of said States

by said conspirators, and by means of impeding, hindering, obstructing and defeating the due course of justice in said States, plaintiff has been damaged in the sum of $2,500,000.00, $1,000,000.00 actual and $1,500,000.00 punitive, for which sum and costs plaintiff prays judgment."

All of the overt acts of defendants charged in the complaint as done pursuant to the alleged conspiracy occurred in the course of litigation in State courts. It is alleged that between July 14, 1928, and December 23, 1931, the defendants "instituted, or caused to be instituted, 14 fictitious suits and claims in the courts of Missouri, Kansas and Oklahoma;" that some of the suits were still pending despite the efforts of plaintiff to have them dismissed; that in some of them the courts in which they were pending have been caused by the defendants to "purposefully and intentionally" enter judgments which were contrary to law or void because the court entering the judgment was without jurisdiction of the subject matter of the action, or because in much of the litigation in the Probate Courts of Kansas and Missouri the Commerce Trust Company appeared on both sides of the litigation, for example, as executor of the estate of John Moffett, deceased, in the prosecution of claims against itself as administrator of the Moffett Brothers partnership, and as administrator of the Moffett Brothers and Andrews partnership against itself as administrator of Moffett Brothers partnership.

The Commerce Trust Company and its attorney, B. C. Howard, are charged with having wrongfully advised Helen Weede that she might legally renounce the will of her husband, John Moffett, and claim one-half of his estate as his surviving widow, and with refusing to appeal judgments in actions involving accountings between the estates under administration. Helen Weede is charged with destroying a prenuptial agreement alleged to have been executed with her husband, John Moffett, and with fraudulently prosecuting successful claims for one-half of his estate; Orlin Weede with concealing material evidence; and Kopp and Copman with furnishing to the other defendants false statements of

the accounts of the various Moffett enterprises for use in the prosecution of claims in favor of the estate of John Moffett against the estate of Thomas S. Moffett and the Moffett Brothers partnerships.

It is alleged that the action of the Jackson County Probate Court in Missouri, in removing Thomas S. Moffett as administrator of the estate of John Moffett and the Moffett Brothers partnerships in Missouri, was void because the judge presiding was not the duly acting and qualified judge of the court, and because the court applied statutes of Missouri which were void because contrary to the State Constitution. With regard to some of the litigation in which void judgments are alleged to have been entered, notably in the Harper County, Kansas, District Court, the grounds upon which plaintiff now asserts that the judgments are void, or the subject matter of the actions not within the jurisdiction of the court, are said to appear of record in the District Court and in the records on the subsequent appeals to the Kansas Supreme Court which affirmed the judgments of the trial courts. In regard to all of the State court judgments now under attack, the inference is inescapable from the complaint that in each case the plaintiff or Thomas S. Moffett appeared, was represented by counsel, was accorded a complete trial, in all of the actions enjoyed the right of appeal, and in many of them exercised it without avail. It further appears that in the cases in the Supreme Court of Kansas and in the Supreme Court of Missouri plaintiff sought a review in the Supreme Court of the United States which was denied on the ground that no Federal question was presented.

Typical of the charges in the complaint is one in which the plaintiff alleges that on August 22, 1941, she instituted an action in the Circuit Court of Jackson County, Missouri, against the defendants in the present action "for the same damages caused by the same conspiracy and the same overt acts pursuant thereto, seeking the same relief sought in this action;" that the action was dismissed by the trial court on the ground of misjoinder of parties plaintiff; that on appeal the State Su-

preme Court applying a Missouri statute, which plaintiff claims had been repealed, affirmed the judgment of the lower court. It is alleged that the erroneous decisions of the Missouri courts were caused by defendants in furtherance of the conspiracy alleged in the complaint and constituted a denial to the plaintiff of the equal protection of the law in violation of the 14th Amendment.

■ Reading the complaint in the light most favorable to the plaintiff, we agree that the District Court correctly ruled the motion to dismiss the complaint.

■ The Federal statutes which the plaintiff invokes "were intended to provide for redress against State action and primarily that which discriminated against individuals within the jurisdiction of the United States. * * * The statutes, while they granted protection to persons from conspiracies to deprive them of the rights secured by the Constitution and laws of the United States * * * did not have the effect of taking into federal control the protection of private rights against invasion by individuals. * * * The protection of such rights and redress for such wrongs was left with the States." Love v. Chandler, 8 Cir., 124 F.2d 785, 786, 787; Gregoire v. Biddle, 2 Cir., 177 F.2d 579, 581–582; Campo v. Niemeyer, 7 Cir., 182 F.2d 115, 118; Bottone v. Lindsley, 10 Cir., 170 F.2d 705, 707. Compare Hardyman et al. v. Collins, 9 Cir., 183 F.2d 308.

In Gregoire v. Biddle, the court had under consideration a complaint charging that the defendants, Federal officers, subjected the plaintiff to the deprivation of his liberty and of his rights, privileges, and immunities secured by the Constitution and laws of the United States, and deprived him of equal protection of the laws in violation of sections 43, 47, and 48, 8 U.S.C.A. In holding that the complaint failed to state a claim upon which relief could be granted, the court said 177 F.2d at pp. 581–582:

"Section 43 is so plainly limited to acts done under color of some state or territorial law or ordinance that no discussion can make it clearer than appears from its reading. It is equally plain that neither the first, nor second, subdivisions of § 47 cover the situation at bar; they concern attempts to deprive persons of public office, or of access to courts or other tribunals, where they may wish to assert their rights. The first clause of the third subdivision of § 47 does declare that, if two or more persons conspire to deprive 'any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws', the injured party may recover damages. The plaintiff's argument appears to be that this language creates a claim against any two persons who conspire to injure another for spite or other improper motives, apparently because to single out anyone for illegal aggression is to deny him equal protection of the laws. Quite aside from the fact that in order so to construe the words they must be broken from a context which shows their more limited meaning, it is apparent that they could not have had such a scope without destroying their validity constitutionally. * * * Section 48 does not go beyond what is forbidden by § 47."

In Campo v. Niemeyer, the court disposed of a complaint charging that State judges, a lawyer, and a private individual conspired to defraud the plaintiff of her property without due process, as follows, 182 F.2d at p. 118:

"The Fourteenth Amendment prohibits a State from depriving any person of life, liberty or property without due process of law; but this adds nothing to the rights of one citizen against another. It simply furnishes an additional guaranty against an encroachment by the States upon the fundamental rights which belong to every citizen as a member of society. * * * It is State action of a particular character that is prohibited. Individual invasion of individual rights is not the subject matter of the amendment. In re Civil Rights Cases, 109 U.S. 3, 11, 3 S.Ct. 18, 27 L.Ed. 835.

"In our case the complaint alleges no more than plaintiff's involvement in litigation in the courts of Illinois. The gravamen or real ground of plaintiff's suit is that defendants maliciously and corruptly

conspired to defraud her of her property. Despite the vituperative accusations against defendants, a fair reading of the complaint discloses that she complains only of an alleged invasion of a private right. She was not subjected to any greater hazard than any other citizen of Illinois who is called upon to defend a law suit. * * "

In Bottone v. Lindsley, in which the complaint charged a conspiracy by State court proceedings to deprive the plaintiff of his property without due process of law and to deny him the equal protection of the law in violation of the 14th Amendment, the court used the following language in the course of its opinion sustaining the action of the district court in dismissing the complaint, 170 F.2d at p. 707:

"It is conceivable that persons, either individually or acting in concert might so use the state judicial process as to deprive a person of his property without due process of law, or of equal protection of the laws, yet we are certain that to make out a cause of action under the Civil Rights Statutes, the state court proceedings must have been a complete nullity, with a purpose to deprive a person of his property without due process of law. To hold otherwise would open the door wide to every aggrieved litigant in a state court proceedings, and set the federal courts up as an arbiter of the correctness of every state decision. 'The Fourteenth Amendment did not alter the basic relations between the States and the national government.' Screws v. United States, supra, 325 U.S. [91] at page 109, 65 S.Ct. [1031] at page 1039, 89 L.Ed. 1495, 162 A.L.R. 1330. Nor does it 'assure uniformity of decisions or immunity from merely erroneous actions * * *.' See Justice Frankfurter concurring in Snowden v. Hughes, 321 U.S. 1, 15, 64 S.Ct. 397, 404, 88 L.Ed. 497."

▮ All that the complaint in the present case charges against the individual defendants is that by their resort to the State courts for the settlement and administration of complicated estates the plaintiff, as one of the interested parties, has been involved in expensive, prolonged, and generally unsuccessful litigation. We dismiss as unworthy of consideration the allegation that the administrators and executors acting under court appointments in the various States in which the property of the estates was located were agents of sovereign powers of the States, and as plaintiffs or defendants in the State court actions were acting under color of law within the meaning of anything in the Civil Rights Act or the 14th Amendment. Wilcox v. Horan, 10 Cir., 178 F.2d 162, 165. Plaintiff's allegations that the decisions of the various State courts in litigation in which she was involved were void or arbitrarily or willfully made merely expresses an opinion not uncommon among defeated litigants, and, as appears from the face of the complaint, not entertained by the State Supreme Courts which reviewed the judgments. The charge that the State court judgments were intentionally and purposefully against plaintiff, aside from the fact that the language used would apply equally as well to the decision of any court, right or wrong, adds nothing to the force or effect of the complaint. Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L. Ed. 497. But assuming that the State court proceedings were not within the jurisdiction of the courts which decided them, or that they were contrary to State law or procured by fraud or perjury, they were not void but, at most, erroneous. Nothing in the Civil Rights Act gives a Federal court jurisdiction to review them.

The Ninth Circuit in Hardyman et al. v. Collins has held, one judge dissenting, that State action is not an essential of a claim within the jurisdiction of the Federal court under 8 U.S.C.A. § 47(3). But the majority opinion makes clear that the conspiracy by private persons within section 47(3) must be one to deprive the plaintiff of a right guaranteed by the Federal Constitution. Here the complaint fails to show that plaintiff has suffered or will suffer the deprivation of a Federal right. The Federal Constitution does not guarantee a citizen against loss through fictitious or fraudulent litigation or through erroneous decisions of State courts on questions of State law nor, as we have seen, does it guarantee uniformity of de-

cisions on the part of State courts nor protect the citizen against the invasion of private rights by private parties.

One other contention of plaintiff may be noticed. Defendants filed motions to dismiss the action on various grounds, one being the failure of the complaint to state a claim upon which relief could be granted, and also in the alternative for summary judgment. Both parties filed numerous affidavits and exhibits in support of and in opposition to the motion for summary judgment. It is now contended that since the District Court permitted the parties to file these affidavits and exhibits it was error to dismiss the complaint for failure to state a claim on which relief could be granted. Rule 12(b) of the Rules of Civil Procedure, 28 U.S.C.A., is relied on in support of this contention. The rule provides that if, on a motion asserting failure to state a claim upon which relief can be granted, matters outside the pleadings are presented and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by Rule 56, which provides for the procedure on motions for summary judgment. The District Judge declined to pass on the motion for summary judgment and granted the motion to dismiss. We are unable to see that this action which is clearly within the power of the court has resulted in any prejudice to the plaintiff. The matter "outside the pleadings" was presented on the motion for summary judgment. Rule 12(b) is not applicable.

Rule 10 of this court provides that the printed record on appeal from the District Court shall contain all the essential pleadings, essential docket entries, the judgment appealed from, the opinion, and the findings and conclusions of the trial court, and only so much of the evidence as may be necessary to enable the court to determine the question presented. The only question presented on this appeal is the sufficiency of the complaint. All that was required or permitted in the printed record was the complaint, the order of the District Court dismissing it, its opinion, and any pertinent docket entries. Plaintiff, proceeding we suppose on the theory that everything that was filed in the District Court either on the motion to dismiss or upon the motion for summary judgment should be included in the record, has filed in this court a printed record of 787 pages. The Commerce Trust Company, doubtless acting upon the same theory and under our Rule 10(b) which permits the printing of supplements to the record printed by appellant, has filed a printed supplement of 995 pages, and appellees, Helen Weede and Orlin A. Weede, a supplement of 1037 pages. Our Rule 10(e) provides that the expense of printing records which do not substantially conform to the requirements of the rule regarding elimination of nonessential matter will not be allowed as costs. In this case the parties have submitted printed records in excess of 2800 pages, of which at a conservative estimate 2600 pages were unnecessary. The result has been to increase beyond any possible justification the expense of the parties to the action. None of the expenses incurred by the defendants in printing supplements to the record on appeal will be allowed as costs.

The judgment of the District Court is affirmed.