**AMERICAN DRILLING SERVICE COMPANY, Plaintiff-Appellant,**

**v.**

**CITY OF SPRINGFIELD, Missouri, Defendant,**

**and**

**Wilkerson-Maxwell Company, Defendant-Respondent.**

No. 11889.

Missouri Court of Appeals, Southern District, Division One.

March 2, 1981.

Motion for Rehearing or to Transfer Denied March 27, 1981.

James G. Wiehl, Richard R. Hardcastle, III, Greensfelder, Hemker, Wiese, Gale & Chappelow, St. Louis, William H. McDonald, David W. Ansley, John E. Price, Woolsey, Fisher, Whiteaker, McDonald & Ansley, Springfield, for plaintiff-appellant.

Jeffrey B. Rosen, Richard W. Miller, Miller & Glynn, P.C., Kansas City, James L. Bowles, Daniel, Clampett, Rittershouse, Dalton & Powell, Springfield, for defendant-respondent.

1. All references to rules are to Missouri Rules of Court, V.A.M.R.

**FLANIGAN, Judge.**

Plaintiff American Drilling Service Company ("American"), brought this action against defendant, City of Springfield, and defendant, Wilkerson-Maxwell Company ("Wilkerson"). Prior to May 24, 1977, the city entered into a contract with Wilkerson under which Wilkerson, a general contractor, was to perform construction work on a project known as the "Reconstruction of Benton Avenue Viaduct" in accordance with plans and specifications prepared by the city. On May 24, 1977, American, as subcontractor, entered into a subcontract with Wilkerson to perform a portion of the work and furnish certain materials in accordance with the general contract and the plans and specifications. American completed its work on November 4, 1977. This action was instituted on December 18, 1978.

The petition involved here is the third one filed by American, its two predecessors having been successfully attacked by a variety of motions. The instant petition is in three counts. Count I is directed against the city. Count II and Count III are directed jointly against the city and Wilkerson. The basic inquiry on this appeal is whether the trial court erred in holding that both Count II and Count III failed "to state a claim upon which relief can be granted," Rule 55.-27(a)(6),[1] against Wilkerson.

Wilkerson attacked the instant petition by filing four alternative motions, including a motion to dismiss on the ground that both Count II and Count III failed to state a claim upon which relief can be granted against Wilkerson, and a motion for summary judgment, Rule 74.04. In support of the motion for summary judgment Wilkerson attached an affidavit and other documentary evidence allegedly constituting admissions of American.

On January 29, 1980, in a letter to counsel for all parties, the trial court said: "American, the subcontractor, brings suit against Wilkerson, the contractor, and the city for extra work and labor American contends it is entitled to in this cause. There are two

contracts involved: the contract between the city and Wilkerson, and the contract between Wilkerson and American. The contract between Wilkerson and American is subject to the terms and conditions of the contract between the city and Wilkerson. *American's contract with Wilkerson makes provision for American to make its claim by suing in the name of Wilkerson. Although given the opportunity, American refuses to specifically allege that it has ever requested Wilkerson to go forth with the litigation if necessary to obtain payment of the amount allegedly owed.* There can be no argument but that Wilkerson cannot proceed against the city without the consent of American. As the matter now stands, Wilkerson's hands are tied because American refuses to use the avenue open to it under the contract. The motion of Wilkerson to dismiss will be sustained, effective February 11, 1980." (Emphasis added.)

On February 14, 1980, the trial court made the following entry: "Motion to dismiss filed by defendant Wilkerson is sustained." Plaintiff American appeals from that order.[2] American's claims against the city remain pending in the trial court and are not involved in this appeal.

American's first, and main, point is that the trial court erred in sustaining Wilkerson's motion to dismiss. The basis of the motion was that Count II and Count III failed to state a claim upon which relief can be granted against Wilkerson. The ruling was wrong, argues American, for several reasons including: (a) each count did state a claim upon which relief can be granted against Wilkerson, and (b) Section 11[3] of the American-Wilkerson subcontract, which figured in the trial court's ruling, applies only to the processing of claims against the

city and does not apply to American's claims against Wilkerson.

Before American's first point is considered it is necessary to determine the appropriate mode of appellate review. The last sentence of Rule 55.27(a) reads: "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 74.04, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 74.04."

■ It is the position of Wilkerson that the order of dismissal was based, in part, on "matters outside the pleadings" and, pursuant to Rule 55.27(a), must be treated as a summary judgment in favor of Wilkerson and reviewed as such[4] by this court. In support of that position Wilkerson cites five cases.[5] Each of those cases, however, is distinguishable from the instant case in that none of them involved the *joint* and *alternative* presentation to the court of a motion to dismiss for failure to state a claim upon which relief can be granted, Rule 55.27(a)(6), and a motion for summary judgment, Rule 74.04.

The counterpart to Rule 55.27 is Rule 12(b) of the Federal Rules of Civil Procedure. The last sentence of said Rule 12(b) is identical to the last sentence of Rule 55.27(a) except that the federal rule makes reference to Rule 56, F.R.C.P., which is the federal rule on summary judgment, and uses the word "pleading" where the last

2. After a premature appeal the trial court, on remand by this court, designated its ruling of February 14, 1980, as final for purposes of appeal. See *Spires v. Edgar*, 513 S.W.2d 372[3] (Mo.banc 1974).

3. See Footnote 7.

4. For the rules governing appellate review of an entry of summary judgment see *Peer v. MFA Milling Company*, 578 S.W.2d 291, 292[1] (Mo.App.1979).

5. *Empiregas, Inc. of Noel v. Hoover Ball & Bearing Co.*, 507 S.W.2d 657, 660 (Mo.1974); *Ellis v. Jewish Hospital of St. Louis*, 581 S.W.2d 850, 851 (Mo.App.1979); *Sherwood Estates Homes Ass'n v. Watt*, 579 S.W.2d 851, 852 (Mo.App.1979); *Kelley v. Schnebelen*, 545 S.W.2d 332, 334 (Mo.App.1976); and *Defford v. Zurheide-Hermann, Inc.*, 536 S.W.2d 804, 808 (Mo.App.1976).

sentence of Rule 55.27(a) uses "pleadings." The last sentence of present Rule 55.27(a) was inserted into that rule in 1973. See *Empiregas, Inc. of Noel v. Hoover Ball & Bearing Co.*, 507 S.W.2d 657, 660 (fn. 4) (Mo.1974).

In the following Missouri cases a motion to dismiss was based on the ground that the petition failed to state a claim upon which relief can be granted, Rule 55.27(a)(6). These cases hold that before the trial court may treat such a motion as a motion for summary judgment, when matters outside the pleadings are presented and not excluded, the trial court must first notify the parties that it is treating the motion as one for summary judgment and give the parties reasonable opportunity to present all material pertinent to a motion for summary judgment. *Laclede Gas Company v. Hampton Speedway Company*, 520 S.W.2d 625, 628–629 (Mo.App.1975); *Kipper v. Vokolek*, 546 S.W.2d 521, 523[3], 524[4] (Mo.App. 1977); *Stix & Co., Inc. v. First Mo. Bank & Tr. Co., Etc.*, 564 S.W.2d 67, 69[2] (Mo.App. 1978).

In *Feinstein v. Edward Livingston & Sons, Inc.*, 457 S.W.2d 789 (Mo.1970), a motion to dismiss for failure to state a claim upon which relief can be granted was accompanied by an alternative motion for summary judgment. The trial court sustained the motion to dismiss but the motion for summary judgment "was not passed upon by the trial court, but, instead, was merely declared by the trial court as being moot." The supreme court held that the motion for summary judgment was not before it for review and the court reviewed only the ruling on the motion to dismiss, the review being confined to the face of the petition.

It is true that *Feinstein* was decided before Rule 55.27(a) was amended to include its present last sentence. There are, however, federal authorities, decided after Federal Rule 12(b) attained its present form, which are in accord with the rationale of *Feinstein*.

The following federal authorities hold that when a trial court grants a motion to dismiss, based on a failure of the pleading to state a claim upon which relief can be granted, and makes no ruling on a motion for summary judgment *which was filed jointly* with the motion to dismiss, and the motions are accompanied by "matters outside the pleadings," and there is nothing in the record to show that the trial judge took those matters into consideration, an appeal is governed by the rules of appellate review pertaining to the sustensions of motions to dismiss and is not governed by the rules of appellate review pertaining to the grant of a summary judgment. *Reid v. Hughes*, 578 F.2d 634, 636[2] (fn. 2) (5th Cir. 1978); *Dinwiddie v. Brown*, 230 F.2d 465, 468[3] (5th Cir. 1956); *Moffett v. Commerce Trust Co.*, 187 F.2d 242, 249[6] (8th Cir. 1951); *Contra: S. & S. Logging Co. v. Barker*, 366 F.2d 617, 622[4–6] (9th Cir. 1966); *Richardson v. Rivers*, 335 F.2d 996, 998[1–2] (D.C.Cir.1964).

The issues in this case are complex. The legal file component of the record on appeal, Rule 81.12(a), filed by appellant American, is 77 pages in length. The "supplemental record on appeal," Rule 81.12(e), filed by respondent Wilkerson, is 174 pages in length. There is nothing in the instant record to show that the trial court, in ruling the motion to dismiss, considered anything other than the face of the petition (and *its* attachments). The court's letter of January 29, 1980, makes it clear that its ruling was based upon the contents of the subcontract, which was attached to the petition. The trial court did not rule on the motion for summary judgment nor did it notify the parties that it was treating the motion to dismiss as a motion for summary judgment.

American's brief as appellant proceeds on the assumption that the rules governing appellate review of the trial court's order are those applicable to the granting of motions to dismiss based on failure to state a claim upon which relief can be granted. As has been demonstrated, there is substantial authority to justify that assumption. This court holds that American's assumption is valid.

In its brief as respondent Wilkerson takes the position, now rejected by this court,

that the instant appeal is governed by the rules of appellate review pertaining to the grant of a summary judgment. If this court were to adopt Wilkerson's position, which does have some support in the federal authorities, fairness would require that this court grant American leave to file a new brief. In the interest of expediting this appeal, and in accordance with the *Reid, Dinwiddie*, and *Moffett* cases which seem to express the sounder and more practical view, this court rejects Wilkerson's position.[6] The motion for summary judgment remains pending, and unruled, in the trial court and if Wilkerson desires to obtain a ruling on it in that tribunal it is free to do so. Wilkerson is not prejudiced by this court's decision with respect to the mode of its review.

 American's first point will now be considered in light of the following principles. "Where a petition is attacked by a motion to dismiss for failure to state a claim, the mere conclusions of the pleader are not admitted. But the facts alleged are taken to be true and the pleader is entitled to all favorable inferences fairly deducible therefrom. If such facts and such inferences, viewed most favorably from plaintiff['s] standpoint, show any ground for relief, the petition should not be dismissed." *Moseley v. City of Mountain Grove*, 524 S.W.2d 444, 446[2] (Mo.App.1975) (citing authorities). If the allegations of the petition invoke principles of substantive law which may

entitle the plaintiff to relief, the petition is not to be dismissed. *Laclede Gas Company v. Hampton Speedway Company, supra*, 520 S.W.2d at 629[4]. A petition is not be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Euge v. Golden*, 551 S.W.2d 928, 931[5] (Mo.App.1977). "The ruling [on a motion to dismiss] is ordinarily confined to the face of the petition which is construed in a light favorable to plaintiff." *McDonough v. Aylward*, 500 S.W.2d 721, 722[1] (Mo.1973).

Count II and Count III of the petition were directed against Wilkerson (and the city). After alleging the corporate status of the parties, Count II sets forth, among other things, the matters contained in the next six paragraphs.

In April 1977 the city, through its engineer, prepared plans and specifications for the "Reconstruction of Benton Avenue Viaduct" project. The "bidding documents" accompanying the specifications included the "anticipated rock per bid document." Wilkerson was awarded the general contract and entered into a contract with the city.

On May 24, 1977, American, as subcontractor, and Wilkerson, as the general contractor, entered into a subcontract which is attached to and incorporated in the petition. Material portions of the subcontract are set forth below.[7]

---

**6.** This court is mindful of the decision in *Helbig v. Murray*, 558 S.W.2d 772 (Mo.App.1977), where a motion to dismiss for failure to state a claim was joined with a motion for summary judgment, the latter supported by affidavit. The parties entered into a stipulation of fact. The trial court confined its ruling to the motion to dismiss. Apparently the court of appeals treated the order under review as a summary judgment. There, however, the controlling fact was the non-residency of the plaintiff and that fact had been stipulated. In the instant proceeding this court is not confronted by a simple, and stipulated, fact situation.

**7.** SUBCONTRACT

This Agreement, made this 24th day of May, 1977, by and between [American], hereinafter called the subcontractor, and [Wilkerson], hereinafter called the contractor,

WITNESSETH:

Section 1. *Contract Documents.* [American] agrees to furnish all supervision, labor, tools, equipment, materials and supplies necessary to perform, and to perform, all work set forth in Section 2 ... in accordance with the terms and provisions of the contract between [the city] and [Wilkerson], including all the General and Special Conditions, Drawings, Specifications and other documents forming or by reference made a part of the contract between [Wilkerson] and [the city], all of which shall be considered part of this Subcontract ... and [American] agrees to be bound to [Wilkerson] and [the city] by the terms thereof.

. . . . .

Section 3. *Payment.* (a) [Wilkerson] agrees to pay [American] for the performance of this Subcontract, as specified herein, the sum of

American began its work on July 6, 1977, and completed it on November 4, 1977, "having performed each and every condition and requirement of its subcontract and additional and extra work."

The specifications and the "anticipated rock per bid document" represented and warranted that the plans and specifications had been competently prepared, that American "had received a full disclosure of all pertinent data concerning subsoil conditions" at the work site, that the subsoil conditions to be encountered by American would not be materially different from those represented in them, and that American could base its bid upon the subsurface conditions so represented.

The city knew and intended that American would rely upon the bidding documents in computing its bid and in entering into the subcontract. The representations and warranties were material and American did in fact rely upon them in preparing its bid and in entering into the subcontract. The representations and warranties were false and inaccurate in that American encountered subsoil conditions materially different from those represented in the bidding documents. The unexpected subsoil conditions were specifically described. As a result of the misrepresentations, "implemented and effectuated through" the subcontract, American was caused to perform "additional and extra work," entailing additional equipment, labor and materials.

Wilkerson failed to pay for the "additional and extra work" which was done by American at the instance of Wilkerson after Wilkerson became aware of the "extra work required of American due to materially different subsurface conditions." Wilkerson caused American to perform the addi-

Fifty-Nine Thousand Six Hundred Fifty-Five & no/100 Dollars ($59,655.00), subject to additions and deductions for changes agreed upon or determined, as hereinafter provided. Partial payments will be made to [American] each month in an amount equal to 90 percent of the value ... of the work performed hereunder, less the aggregate of previous payments, but such partial payments shall not become due to [American] until 10 days after [Wilkerson] receives payment for such work from [the city].... *Upon complete performance of this subcontract by [American] ... [Wilkerson] will make final payment to [American] of the balance due to [American] under this Subcontract within 30 days after full payment for such work and materials has been received by [Wilkerson] from [the city].*

. . . . . .

Section 11. *Third Party.* The parties hereto do not intend by any provision hereof to create any third-party beneficiaries, nor to confer any benefit upon or enforceable right hereunder or otherwise upon anyone other than the parties hereto.

Any decision concerning the work, the intendment or application of the General Contract, or claims for payment or compensation thereunder in respect to work done or omitted hereunder which is binding upon the Contractor shall bind the Subcontractor absolutely, whether such decision be made by the Owner, the Architect or any officer, agency, or tribunal empowered to render the same by the General Contract or any procedure referred to therein or contemplated thereby. The Contractor may dispute, appeal from and in every manner resist and litigate any and every such decision, without being deemed thereby to have admitted any obligation or liability to the Subcontractor, and if the decision shall go against the Contractor, then the Subcontractor shall be concluded thereby, and nothing previously said, done, contended or stipulated by the Contractor shall be offered or received in evidence in any proceeding of the Subcontractor against the Contractor. In any and all events, the Subcontractor shall bear a just part of all costs and expenses incurred by the Contractor in any proceeding, appeal or litigation involving a claim which, if allowed, would result in a payment(s) to the Subcontractor, in the proportion that the amount claimed for the benefit of the Subcontractor shall bear to the whole amount sought in the same proceeding, appeal or litigation. The Contractor shall not be obligated to assert or continue the prosecution of any claim for the benefit of a Subcontractor, nor to maintain or continue any proceeding, appeal or litigation thereon, and may refrain from asserting or abandon the same at any stage, in the discretion of the Contractor, unless the Subcontractor demands presentation or continuation thereof, pays in advance to counsel designated by the Contractor, as a retainer, to apply on the final fee, such counsel's estimate of the costs and expenses of the proceeding, appeal or litigation so demanded, and cooperates with such counsel fully in the compilation and presentation of supporting data and evidence. In any and all events the prosecution of any such claim shall be at the risk of the Subcontractor, and Contractor shall have no responsibility or liability for or in relation to the outcome thereof.

tional and extra work which required an expenditure, in addition to the subcontract price of $59,655, of $99,307, for which amount American prayed judgment on Count II.

Relying upon the last sentence of Section 3(a) of the subcontract, the brief of Wilkerson states: "Wilkerson is not obligated, and cannot be expected, to pay any money to American until Wilkerson has been paid an equal sum from the city." This argument is unsound.

If, as the instant petition alleges, American has fully performed its subcontract, the last sentence of Section 3(a) does not permit Wilkerson to postpone payment of the amount due American for a period of 30 days after Wilkerson has received from the city full payment for the work. The parties have cited no Missouri case dealing with the question but there is an impressive and convincing array of outstate authorities holding that a clause of that type is not to be accorded the effect which Wilkerson seeks to attribute to it.

■ A clause which provides that the contractor shall pay a subcontractor within a stated number of days after the contractor has received payment from the owner merely fixes the time when payment is due and does not establish a condition precedent to payment. *Byler v. Great American Insurance Company*, 395 F.2d 273 (10th Cir. 1968); *Thos. J. Dyer Co. v. Bishop International Engineering Co.*, 303 F.2d 655 (6th Cir. 1962); *Midland Engineering Co. v. John A. Hall Const. Co.*, 398 F.Supp. 981 (N.D. Ind.1975); *Watson Const. Co. v. Reppel Steel & Supply*, 123 Ariz. 138, 598 P.2d 116 (App.1979); *Yamanishi v. Bleily and Collishaw, Inc.*, 105 Cal.Rptr. 580, 29 Cal.App.3d 457 (1972); *Peacock Const. Co. v. Modern Air Conditioning, Inc.*, 353 So.2d 840 (Fla. 1977); *Atlantic States Construction Co. v. Drummond & Co.*, 251 Md. 77, 246 A.2d 251 (1968); *A. J. Wolfe Company v. Baltimore Contractors, Inc.*, 244 N.E.2d 717 (Mass. 1969); *Schuler-Haas Elec. v. Aetna Cas. & Sur.*, 49 A.D.2d 60, 371 N.Y.S.2d 207 (1975); *Howard-Green Elec. Co. v. Chaney & James Const. Co.*, 12 N.C.App. 63, 182 S.E.2d 601

(1971); *Elk & Jacobs Drywall v. Town Contractors*, 267 S.C. 412, 229 S.E.2d 260 (1976).

■ In *Byler* it is said that courts look with disfavor upon such a clause and will not construe it as a condition precedent unless required to do so by plain and unambiguous language. The clause is designed only to delay payment for a reasonable time and does not otherwise affect the obligation to pay the subcontractor. In *Dyer* the court said that the purpose of the clause is to postpone payment for a reasonable time after the work is completed during which the general contractor is afforded the opportunity of procuring from the owner the funds necessary to pay the subcontractor. "To construe it as requiring the subcontractor to wait to be paid for an indefinite period of time until the general contractor has been paid by the owner, which may never occur, is to give to it an unreasonable construction which the parties did not intend at the time the subcontract was entered into." *Dyer*, at p. 661. In *Midland* it is said the clause is not intended to provide the contractor with an eternal excuse for nonpayment. *Peacock* points out that the subcontractor will not ordinarily assume the risk of the owner's failure to pay the general contractor and in order for that risk to be shifted to the subcontractor, the clause must unambiguously express that intention. In *Wolfe*, a leading case on the point, the court said that the clause merely sets a time for payment and does not create a condition precedent to payment and that in the absence of a clear provision that payment to the subcontractor is to be directly contingent upon receipt by the general contractor of payment from the owner, the clause only postpones payment by the general contractor for a reasonable time after completion of the subcontractor's work.

Relying upon Section 11 of the subcontract, Wilkerson argues that the petition is fatally defective for the reason that it fails to allege that American demanded that Wilkerson sue the city, for the benefit of American, to obtain payment of American's claim.

It should be noted that the petition alleges that American performed "additional and extra work." In *Haughton Elevator Co. v. C. Rallo Contracting Co.*, 395 S.W.2d 238, 245 (Mo.App.1965) the court, in discussing the distinction between "extra work" and "additional work" said:

"Extra work, as used in connection with building contracts, means work of a nature not contemplated by the parties and not controlled by the contract. 17A C.J.S. Contracts § 371(6), p. 411; *Casgrain v. Milwaukee County*, 81 Wis. 113, 51 N.W. 88. 'Extra' work is work entirely independent of the contract, something not required in its performance.... Additional work is something necessarily required in the performance of the contract, and without it the work could not be carried out." [8]

Wilkerson's argument assumes that compliance by American with Section 11 is a condition precedent to the enforcement of American's claim against Wilkerson. Inherent in that assumption are the following additional assumptions: (1) A decision by the city not to pay Wilkerson for work completed by American is included in the language "any decision" contained in the second sentence of paragraph 11 and is one which, in the absence of litigation, "is binding" upon Wilkerson; (2) Section 11 applies to the payment of claims for "extra work"; [9] (3) The remedy afforded by Section 11 is exclusive.[10]

■ It is unnecessary for this court to determine the validity or invalidity of any or all of the assumptions set forth in the preceding paragraph. Even if it be assumed, arguendo, that compliance by American with Section 11 is a condition precedent to the enforcement of American's claim against Wilkerson, the instant petition sufficiently pleads performance of that condition. The petition alleges that American "performed each and every condition and requirement of the subcontract." This allegation is sufficient to satisfy Rule 55.16 which deals with averments and denials of conditions precedent.

■ Count II contains allegations which purport to be breaches by Wilkerson of the subcontract. Other allegations of Count II, including those previously described, sound in quantum meruit. The theories of quantum meruit and express contract may be jointly pleaded, *Kaiser Alum. & Chem. Sales, Inc. v. Lingle Refrig. Co.*, 350 S.W.2d 128, 131 (Mo.App.1961). "Moreover, '[i]f the petition contains averments which, if proved, would entitle plaintiff to recover either on an express contract or on quantum meruit, and if it is impossible to say definitely whether plaintiff is counting on one or the other, he may be permitted to recover upon whichever of the two theories his evidence may warrant [authorities cited] and the allegations unnecessary to statement of the cause of action, on which recovery properly may be had, may be treated as surplusage and disregarded.' *Emerson v. Treadway*, 270 S.W.2d 614, 621[14] (Mo.App. 1954)." *McDowell v. Miller*, 557 S.W.2d 266, 270[2, 3] (Mo.App.1977).

In challenging the sufficiency of Count II to plead quantum meruit, Wilkerson's brief says it is deficient because it does not plead "that the claimed amount equals a fair and reasonable value of such extra work." The allegations of Count II, considered in their entirety, would create an inference that the extra work had *some* value. "All pleadings shall be so construed as to do substantial justice." Rule 55.24. Moreover, Wilkerson's criticism is invalid in light of the following principle: "While generally, in a petition in quantum meruit, the reasonable value of services rendered should be al-

8. According to Wilkerson's brief, the city's specifications contain definitions of "additional work" and "extra work." According to those definitions, says Wilkerson, additional work is "within the scope of the contract documents," and "extra work" is "outside the scope of the subcontract."

9. For language indicating that this assumption is probably invalid, see *Thos. J. Dyer Co. v. Bishop International Engineering Co.*, 303 F.2d 655, 658[2] (6th Cir. 1962).

10. See 84 A.L.R.2d 322 (Contractual Provision as to Remedy as Excluding Other Possible Remedies).

leged, *Klein v. Terminal R. Ass'n of St. Louis*, Mo.App., 268 S.W. 660, the omission of such an allegation is not fatal to the statement of claim upon which relief can be granted." *Wright v. Fick*, 303 S.W.2d 157, 159 (Mo.App.1957). See also *Whiteman v. Brandis*, 78 Nev. 320, 372 P.2d 468, 469[1, 2] (1962).

Count II, which is prolix and is not a model of careful draftsmanship, is sufficient to state a claim upon which relief can be granted and the trial court erred in ruling otherwise. Count III, in addition to containing other allegations, incorporated Count II, and thus Count III is sufficient to state a claim upon which relief can be granted and the trial court erred in ruling otherwise.

The judgment is reversed and the cause remanded.

GREENE, P. J., and TITUS, J., concur.